NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 190843-U

NO. 4-19-0843

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 19, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Macon County |
| TORRE L. WILSON, | ) | No. 14CF856 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Thomas E. Griffith Jr., |
| | ) | Judge Presiding. |

---

PRESIDING JUSTICE KNECHT delivered the judgment of the court.
Justice Holder White concurred in the judgment.
Justice Turner specially concurred.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, concluding (1) defendant forfeited his argument concerning the State's closing argument and that forfeiture could not be excused under the plain-error doctrine, and (2) the trial court did not err in rejecting defendant's claim of ineffective assistance and denying his motion for a new trial.

¶ 2    Following a jury trial, defendant, Torre L. Wilson, was found guilty of aggravated domestic battery and resisting a peace officer and sentenced, respectively, to 6 years' imprisonment and 30 days' incarceration. Defendant appeals, arguing (1) the State invaded the purview of the jury by improperly defining great bodily harm during its closing argument and telling the jury it could not determine what constitutes great bodily harm and (2) the trial court erred when it denied his motion for a new trial because he established his trial counsel rendered ineffective assistance. We affirm.

¶ 3                                  I. BACKGROUND

¶ 4                                  A. Information

¶ 5        In July 2014, the State charged defendant by information with aggravated domestic battery (720 ILCS 5/12-3.3(a) (West 2012)) and resisting a peace officer (720 ILCS 5/31-1 (West 2012)). As to the charge of aggravated domestic battery, the State alleged defendant, on or about March 27, 2014, knowingly caused great bodily harm to Heather Vanisavath, a family or household member, by repeatedly striking her and causing her injuries, including two lacerations that required stiches and extensive bruising. That same month, defendant was released on bond. As a condition of his release, defendant was to have no contact with Vanisavath.

¶ 6                                  B. Pretrial Proceedings

¶ 7        In August 2014, defendant appeared for arraignment, at which time the trial court appointed counsel to represent defendant. Defendant then appeared with counsel at a preliminary hearing later that same month. At the hearing, the court admonished defendant he could be tried and sentenced *in absentia* if he failed to appear at later proceedings.

¶ 8        In September 2014, defendant, through counsel, filed a supplemental answer to a pretrial discovery order. The supplemental answer indicated defendant may assert "the additional defense of self-defense" at trial.

¶ 9        In October 2014, defendant appeared with counsel for a pretrial hearing. At the hearing, the court set the matter for a jury trial on December 10, 2014. That same month, the State prepared a subpoena for Vanisavath to appear for trial, which was served upon her on November 25, 2014.

¶ 10        On December 10, 2014, defendant appeared with counsel for trial. Because Vanisavath failed to appear, the State moved for a forthwith subpoena and a continuance, both of which the trial court granted. The court reset the matter for a jury trial on December 17, 2014. Prior to concluding the proceeding, the court asked defendant how he was able to post bond if he was unemployed, to which defendant stated, "She bonded me out."

¶ 11        On December 17, 2014, defendant appeared with counsel for trial. Vanisavath did not appear. Defendant, through counsel, moved for a continuance due to recent motions filed by the State to introduce statements Vanisavath made to her mother and a treating physician. The trial court granted the continuance, set a hearing for the State's motions on January 6, 2015, and reset the matter for a jury trial on January 21, 2015.

¶ 12        On December 18, 2014, the State filed an emergency application to increase bond, and the trial court set a hearing for the next day.

¶ 13        On December 19, 2014, defendant did not appear for the hearing on the State's emergency application to increase bond. Defense counsel informed the court that the day prior he called a phone number he had for defendant and told a man who identified himself as defendant about the hearing and the need to be present. The State presented testimony from Vanisavath's mother and an investigator with the State's Attorney's office. As gleaned from that testimony, Vanisavath and defendant had two minor children together. Since December 9, 2014, Vanisavath had not attended work, and the minors had not attended school. Vanisavath's mother had not heard from Vanisavath or the minors since December 10. Vanisavath and the minors previously reported to Vanisavath's mother that they had had contact with defendant. Vanisavath's mother recently spoke with a friend of Vanisavath, who reported speaking with defendant and learning that

defendant had indicated Vanisavath and the minors were safe. Based on the testimony presented, the court found defendant had contact with Vanisavath. The court granted the emergency application to increase bond, increased bond, and issued a bench warrant.

¶ 14 On January 6, 2015, defendant did not appear for the hearing on the State's pretrial motions. The State informed the court defendant and Vanisavath's whereabouts remained unknown, but the minors had been returned and were residing with their grandmother.

¶ 15 C. Jury Trial

¶ 16 On January 21, 2015, defendant did not appear for trial. Defense counsel informed the trial court he had had no contact with defendant. The State moved to proceed *in absentia*. Defense counsel objected based, in part, on his inability to properly prepare for trial due to defendant's absence. The court granted the State's motion and conducted a jury trial *in absentia*.

¶ 17 Following *voir dire*, defense counsel gave a brief opening statement. Defense counsel asserted only Vanisavath and defendant knew the truth about what occurred and asked the jury to "listen to the evidence and to return your verdict in this case."

¶ 18 Vanisavath testified she was, at the time of trial, 25 years old and worked as a manager at a restaurant. She had been employed with the same restaurant for six years. Vanisavath identified defendant in a photograph and testified she had had a dating relationship with him which lasted "[a]bout seven years."

¶ 19 In March 2014, Vanisavath lived with defendant and their two children in a single-family home. Vanisavath testified, on March 27, 2014, around 11 p.m., she returned home from work. Around 1 a.m., defendant entered the bathroom where Vanisavath was bathing and requested her cell phone. Vanisavath gave defendant her cell phone, and then he left. Defendant returned to

the bathroom and asked Vanisavath for her Facebook password. Vanisavath refused to give defendant her password. Defendant became angered, and a verbal altercation transpired. The verbal altercation transformed into a physical altercation, with defendant striking Vanisavath on her back multiple times with a shower curtain rod. The physical altercation moved out of the bathroom and into the living room. In the living room, defendant struck Vanisavath in her face between 5 and 10 times with his hand because she continued to refuse to give him her password. She exited the home through the bathroom window in fear of defendant. Vanisavath went to a neighbor's home and called her mother. She described to her mother what had occurred. Her mother then called the police, without Vanisavath asking her to do so. Vanisavath cooperated with the police when they arrived and then was taken to the hospital by ambulance.

¶ 20        Vanisavath testified her injuries consisted of a laceration on both ears, a laceration on her hand, bruising of the arm, bruising of her middle finger, bruising of her back, bruising of her left shoulder, and a mark on her forehead. Vanisavath identified photographs of her injuries, which were taken by a police officer. Upon being shown the first photograph, Vanisavath began crying on the witness stand, noting she had not previously seen the photograph. The State then, at times, used leading questions to ask Vanisavath about the injuries depicted in the photographs and how she sustained them. When identifying a photograph showing a laceration of her middle finger, Vanisavath testified she received the injury by striking defendant in his mouth when they were in the living room. The State then asked if she struck defendant "while he was beating you" and in order "to protect yourself," both of which Vanisavath responded in the affirmative. The photographs were admitted into evidence and published to the jury.

¶ 21 Vanisavath testified she experienced pain from the injuries for several weeks and had permanent scarring on both ears. She acknowledged she consumed a pint of gin after returning home from work, and she maintained contact with defendant after the incident. Vanisavath also acknowledged she was testifying only because she received a subpoena. She testified she was no longer in a relationship with defendant but still cared for him. When asked if she knew why defendant was not present in court, Vanisavath testified she did not and that defendant had stated to her he was going to be present.

¶ 22 On cross-examination, Vanisavath acknowledged she smoked cannabis prior to work on the day of the altercation. She also acknowledged throwing a bottle at defendant during the argument. Vanisavath testified she threw the bottle when they were in the living room.

¶ 23 On redirect examination, Vanisavath testified she hit defendant only after he began hitting her and defendant first hit her in the bathroom.

¶ 24 Vanisavath's mother testified she had known defendant since 2007, when he began dating her daughter. She testified defendant was approximately 34 years old when he started dating her 17-year-old daughter. Vanisavath's mother acknowledged defendant was born on September 11, 1974.

¶ 25 Vanisavath's mother testified, on March 27, 2014, she received a phone call from her daughter, who was upset and crying. During the call, her daughter asked her to come and get her because defendant "had beat her up." Vanisavath's mother called the police and then went to Vanisavath's home. Vanisavath's mother testified her daughter did not appear intoxicated when she met with her at her home. Vanisavath's mother confirmed the photographs admitted into

evidence accurately depicted her daughter's appearance when she arrived at the home. On cross-examination, Vanisavath's mother acknowledged she was not present when the incident occurred.

¶ 26       Jeffrey Denny, a physician assistant, testified, at approximately 2:41 a.m. on March 27, 2014, Vanisavath was admitted at the hospital. At that time, Vanisavath did not appear clinically intoxicated. She was oriented and had the capacity to make decisions. Vanisavath stated she had been assaulted, having been struck multiple times with fists and a shower curtain rod. Denny testified Vanisavath's injuries included lacerations to the ears and the right hand and bruising of the head, back, and arms. Vanisavath sustained a full thickness laceration to her left ear, which Denny described as a laceration going through both the skin and the cartilage. Denny testified Vanisavath's injuries were consistent with being struck by fists and a curtain rod. Denny performed suture repair to Vanisavath's left ear, right ear, and right hand. Denny also administered medication to Vanisavath for her pain. The State noted Vanisavath had previously testified she had received permanent scarring from the lacerations to her ears and then asked if Denny expected such scarring to occur, to which Denny responded, "Yeah. That would be consistent especially with the left ear laceration she received." At 6 a.m., Vanisavath was discharged from the hospital. On cross-examination, Denny acknowledged he did not perform a toxicology on Vanisavath, Vanisavath reported she drank half a pint of gin, Vanisavath did not report smoking cannabis, and the injuries to Vanisavath's hands were consistent with striking someone.

¶ 27       Police officer Justin Ziller testified, around 1:23 a.m. on March 27, 2014, he responded to Vanisavath's home. He was wearing a police uniform and driving a marked patrol vehicle. Upon arriving, Officer Ziller heard a noise coming from the rear of the home, which sounded "like a window or a door being opened." He, along with other officers who were present,

proceeded to the rear of the home, where he observed a black man with braided hair picking himself up off the ground directly outside an open window. The man looked at him and then took off running. The man continued to flee even after the officers announced they were police officers. The officers eventually lost sight of the man. Officer Ziller then went and spoke with Vanisavath and Vanisavath's mother. Officer Ziller conducted an interview with Vanisavath, who appeared upset, bruised, bloody, and in pain. He noted she did not appear intoxicated. Because all the doors to the home were locked and Vanisavath indicated her keys were inside, an officer entered the residence through the opened window from which the suspect appeared to have exited. Vanisavath's and defendant's two children were discovered sleeping inside the home. On cross-examination, Officer Ziller acknowledged he could not identify the man he observed outside Vanisavath's home.

¶ 28         Police officer Aaron Carr testified, around 1:23 a.m. on March 27, 2014, he responded to Vanisavath's home. He was wearing a police uniform and driving a marked patrol vehicle. Upon arriving, Officer Carr heard a noise coming from the rear of the home, which sounded "like a banging or a crashing sound." He, along with other officers who were present, proceeded to the rear of the home, where he observed a black man picking himself up off the ground directly outside an open window. When asked approximately "how many feet was he from you when you first saw him and he first saw you," Officer Carr testified, "Initially I got within probably 15 to 20 feet of him." Officer Carr told the man to "holdup or stop," the man "looked directly" at him, and then "immediately began running." The man continued to flee even after the officers announced they were police officers. The officers eventually lost sight of the man. On direct examination, Officer Carr was asked if he was able to get a good look at the man, to which

Officer Carr indicated he had. Officer Carr was then shown a photograph of a man. Officer Carr identified the man in the photograph as both defendant and the man he observed outside the opened window.

¶ 29    On cross-examination, Officer Carr acknowledged he was able to identify the man he observed outside the opened window as defendant only after learning defendant's name and reviewing a photograph of defendant. Specifically, Officer Carr was asked if it was correct that he did not know the identity of the man he observed outside the opened window until somebody showed him a photograph of defendant, to which Officer Carr testified: "A—Officer Ziller advised me that the victim had told him that it was Torre Wilson that had committed this crime. I then pulled up a booking photo that's identical to the one being shown today and identified him from that." Defense counsel followed up, "All right. But that's the only way you could recognized him as Torre Wilson is looking at the photo. Is that correct?" Officer Carr responded, "Correct." Officer Carr also confirmed the man was 15 to 20 feet away when he first observed him and there was no outside lighting except that from his flashlight. When asked how much time he had to observe the man before he took off running, Officer Carr testified, "He looked up at me as soon as I believe he observed that I was a Police Officer he took off running. I would say two to three seconds."

¶ 30    Police officer Lorne Sturdivant testified, on July 12, 2014, he apprehended defendant at a nightclub.

¶ 31    Following the presentation of the State's evidence, defense counsel, outside the presence of the jury, moved for a directed verdict, which the trial court denied. The court then asked if the defense had any witnesses, to which defense counsel stated, "It's quite apparent I don't

have any witness to put on. [The prosecutor] shot down my sock puppet so—um—yes." Defendant did not present any evidence.

¶ 32 During a jury-instruction conference, the trial court asked if defense counsel intended to assert defendant was acting in self-defense, to which defense counsel stated, "I don't believe there's really enough evidence to point to that so, I'm not going to allege that." The court expressed agreement with counsel's position.

¶ 33 In closing argument, the State stated to the jury the judge would give them the "instructions of law," including issues instructions for each offense which "sets forth each proposition of law that the State has to prove, beyond a reasonable doubt, in order for you to find the defendant guilty." As to the charge of aggravated domestic battery, the State acknowledged it had to prove two propositions: (1) defendant knowingly caused great bodily harm to Vanisavath and (2) Vanisavath was a family or household member when defendant caused the great bodily harm to her. The State argued it was uncontradicted defendant and Vanisavath were family or household members. The State then argued:

> "The first proposition is similarly uncontradicted in this
> case. And that's the defendant knowingly caused great bodily harm
> to Heather Vanisavath. As you heard, from the testimony, the
> defendant was the cause of her injuries and they were severe.
> Heather testified to how the defendant cause [*sic*] her injuries by
> slapping her with his hand, beating her with his fist, and beating her
> with a shower curtain rod. You saw pictures of her injuries which

showed how serious they are and showed that they constitute what we call great bodily harm.

Under the law there are two different levels of bodily harm. There's regular bodily harm and there's great bodily harm. Regular bodily harm can be anything as simple as pain with no mark. It can be a paper cut. It can be slight redness. So, any harm caused to a body is bodily harm.

Great bodily harm is not defined under the law. It's not for you to decide what great bodily harm is, but it's something beyond bodily harm. And I would submit to you that Heather's injuries clearly constitute great bodily harm. They are numerous all over body. They include lacerations, which required medical intervention to close, surgical sutures to close, as the Physician's Assistant testified to. Um—they left permanent scaring to at least two area of her body. So, these injuries are more than a paper cut. They're more than redness. They're what refer [*sic*] to, under the law, as great bodily harm. Beyond just Heather's testimony about that, you received the testimony of Police Officers as to her demeanor and to their observations of her injuries.

You also received testimony from the [p]hysician's [a]ssistant concerning the cause of her injuries, what Heather stated where [*sic*] the cause of her injuries and the extent of her injuries.

As well as, the fact that she was in pain and that permanent scaring is consistent with those injuries. And the [p]hysician's [a]ssistant also testified that her injuries were consistent with the history she gave. In other words, her description of how she received the injuries is medically um—consistent and goes along with the injuries that she actually had. All that corroborates her story and will assist you in finding the defendant guilty beyond a reasonable doubt."

¶ 34    In response, defense argued, in part, as follows:

"[A]s I stated earlier, in my opening, I wanted to [*sic*] you to listen to the testimony. And we had testimony up here. However, we don't know exactly what happened on that early morning in March. We don't know exactly what happened. Heather testified as to what she said happened. She testified she'd been drinking and had been doing drugs too. There was an argument. There was an altercation. Outside of that we don't know what happened. So, um—the State has to prove what happened beyond a reasonable doubt. And that's why you folks are here. So, again, thank you.

Um—now, also one [*sic*] the things that they have to prove is the great bodily harm. Now, as [the State] pointed out there is no definition for great bodily harm. Um—it's been through the [c]ourt's [*sic*] and [c]ourt's [*sic*] don't that's up to the trier of fact. You folks are the trier of fact to determine if there was great bodily

- 12 -

harm here. You saw her injuries. There was bleeding. There were some um—sutures made. That in of itself does not make great bodily harm. It's for you folks to decide if that did rise to that level of great bodily harm."

¶ 35 In rebuttal, the State argued, in part, as follows:

"[Defense counsel] says that we don't know the exact details of everything that happened that night. But we absolutely do not have to prove the exact details of everything that happened that night. That is not what our burden is. Our burden is only to prove those elements that are set forth in the instructions that Heather had a relationship with the defendant and that he caused great bodily harm to her that night. That is our burden. No one, other than a video— except if we had video tape, would be able to say exactly what happened over the course of a physical altercation that lasts several minutes. And there's no way we that we could prove every single detail of that fight to you.

And even if we tried to, you probably wouldn't believe that because that doesn't fit with your common sense of how we know human memory works. You don't refer ever little detail. The little details here are relevant. What is relevant and what matters in your deliberations is who cause [*sic*] this great bodily harm to Heather. That is the question. That is the only question and it is absolutely

undisputed in this trial, that the great bodily harm to her was caused by Torre Wilson.

[Defense counsel] also suggests that perhaps harm is not great bodily harm. But, I would, again, ask you to consider what bodily harm is under the law. That it is anything as slight as temporary pain or redness. What happened to Heather certainly goes beyond pain and redness and constitutes great bodily harm under the law. It is a lasting injury. An injury that requires medical intervention to treat. And so, it constitutes great bodily harm."

¶ 36    The trial court instructed the jury, *inter alia*, (1) "A person commits the offense of aggravated domestic battery when he knowingly and by any means causes great bodily harm to any family or household member" and (2) "To sustain the charge of aggravated domestic battery, the State must prove the following propositions: First proposition: That the defendant knowingly caused great bodily harm to Heather Vanisavath; and Second Proposition: That Heather Vanisavath was then a family or household member of the defendant."

¶ 37    Following its deliberations, the jury found defendant guilty of aggravated domestic battery and resisting a peace officer.

¶ 38                                  D. Posttrial Proceedings

¶ 39    In March 2015, defendant, who had recently been taken into custody, appeared with counsel for sentencing. The trial court sentenced defendant to six years' imprisonment for aggravated domestic battery and 30 days' incarceration for resisting a police officer.

¶ 40    In April 2015, defendant, through counsel, filed a motion to reconsider his sentence, alleging the sentence imposed for aggravated domestic battery was excessive.

¶ 41    In May 2015, defendant filed a *pro se* motion for a reduction of his sentence, alleging he was provided ineffective assistance by his trial counsel. In relevant part, defendant alleged, (1) "I never had a chance to go over my discovery material" and (2) "He never submitted the statement of the witness as she (Ms. Vanisavath) had filed an affidavit on [December 22, 2014,] saying that she recanted her statement." Defendant attached to his motion a copy of a letter addressed to the assistant state's attorney prosecuting his case. The letter is dated December 22, 2014, and signed by "[H]eather Vanisavath." Under Heather's signature is a notary's stamp and signature. The letter provides as follows:

> "I, [H]eather Vanisavath would like to recant my statement about Torre Wilson. I do not feel threatened. I have not been harmed, but [I'm] tired of having to run. That night I was upset and intoxicated. I was in the tub when he came in and asked for my [F]acebook password. I told him[,] no. He started getting on my nerves by picking with me. I started getting highly irritated. On top of that[,] I had liquor in my system. So[,] I ended up hitting him with the bottle. After that we both got into an altercation.

> I then called my mom. I specifically told her not to call the police, but she did. My mother was not there when the altercation occur[r]ed, I just wanted to vent to her. I did not want the police involved.

I have not been kidnapped. I do not feel endangered, but I do

not feel comfortable with humiliating myself on the stand because I

lied. I do apologize for those I have lied to. I will be present in court

on the 21st, if it[']s a must."

¶ 42　　　In July 2015, the trial court held a hearing on defendant's posttrial motions. The court (1) dismissed defendant's *pro se* motion for a reduction of his sentence, concluding it was untimely and (2) denied defendant's motion to reconsider his sentence, concluding the sentence imposed was appropriate. The court did not conduct an inquiry into defendant's complaints about his counsel's performance. Defendant appealed.

¶ 43　　　　　　　E. Initial Appellate Proceedings

¶ 44　　　In October 2017, this court agreed with defendant's argument suggesting the matter should be remanded because the trial court failed to conduct an inquiry into his *pro se* posttrial claim of ineffective assistance of counsel. *People v. Wilson*, 2016 IL App (4th) 150628-U, ¶ 28. As a result, we declined to reach defendant's other claims on appeal, noting the result from the proceedings on remand could render those claims moot. *Id.* ¶ 29. We remanded the matter for the trial court to conduct the required inquiry. *Id.* ¶ 31.

¶ 45　　　　　　　F. Initial Remand Proceedings

¶ 46　　　In March 2018, the trial court held a hearing where it conducted an inquiry into defendant's *pro se* posttrial claim of ineffective assistance of counsel. Defendant and defendant's trial counsel appeared at the hearing.

- 16 -

¶ 47　　　　The trial court began by stating each complaint in defendant's *pro se* motion, allowing defendant the opportunity to elaborate on the complaint, and then allowing defendant's trial counsel the opportunity to respond.

¶ 48　　　　As to his complaint suggesting he never had a chance to review the discovery, defendant elaborated: "I never seen the victim statements, witness statements, pictures, blood alcohol level of the victim, hospital care or any evidence that the police had." Trial counsel responded, "[T]o the best of my recollection, he never really came to see me. The only time he ever talked, he said that she would not be there. So he did not come to see me to go over what discovery I had." Counsel further noted he did not "recall talking with him except prior to any pre-trial hearings." Defendant, in response, stated he did meet with counsel at his office and the first thing counsel said to him was, " 'oh, you picked a fine time to catch one of these cases,' " which made him feel as if he was not being helped. Defendant also stated:

> "I told him—I met him—when I met him in his office—only thing
> he asked me was, he said, well, I don't see them having a shower
> curtain rod. Was a shower curtain rod used? I was, like, yes. But I
> told [counsel] that she attacked me. I was defending myself. That's
> how all this—and I gave [counsel] the name of the witness of the
> female that was there when the victim came home. So as far as him
> sitting here saying I didn't have a conversation in his office, we did
> have a conversation in his office. I called [counsel] a couple times
> trying to get in contact with him so we can go over discovery and,
> you know, and talk to him about him calling the witnesses. [E]very

time I tried to get in contact with him, he would never call me back.

Only time I seen him besides the day we met in his office was when

he was coming to court. Then he was, like, well I'll see you next

court date."

Upon inquiry by the trial court, defendant acknowledged he did not contact anyone after his bond was increased on December 19, 2014, through the time he was arrested in March 2015.

¶ 49 With respect to his complaint suggesting trial counsel did not submit Vanisavath's statement, defendant elaborated: "That failing to impeach Ms. Vanisavath with her written statement, failed to test the State's case on meaningful adversarial testing. [Counsel] should have used that statement to impeach Ms. Vanisavath during trial." Counsel responded he cross-examined Vanisavath but did not recall Vanisavath's testimony or the substance of the cross-examination of her. Counsel also stated he was aware of Vanisavath's statement but did not recall if it was in his possession at the time of trial.

¶ 50 After reviewing the written complaints in defendant's *pro se* motion, the trial court allowed defendant the opportunity to add any additional comments about his counsel's performance. Defendant raised several oral complaints including, *inter alia*, the following: (1) counsel did not file a posttrial motion to preserve trial errors for appeal; (2) counsel's opening statement was "brief and somewhat incoherent"; (3) counsel failed to tender a jury instruction concerning the difference between bodily harm and great bodily harm; (4) counsel failed to object to the State leading its witnesses, including those instances where the State reviewed the photographs with Vanisavath; (5) counsel failed to object to the State telling Denny that Vanisavath testified she had scarring; (6) counsel failed to impeach Vanisavath with a previous

- 18 -

felony conviction from Indiana; (7) counsel did not object to the testimony from Vanisavath's mother concerning defendant's age as it was irrelevant, unfairly prejudicial, and hearsay; (8) counsel failed to object to Officer Carr's testimony about a booking photograph as it improperly informed the jury defendant had been arrested; (9) counsel did not assert self-defense at trial; (10) counsel did not object to the State asking Vanisavath why defendant was not present at trial as it called for speculation and hearsay; (11) counsel failed to object to Officer Carr's speculative testimony that defendant ran as soon as he recognized a police officer; and (12) counsel did not object to the State's closing argument indicating it was not for the jury to decide what great bodily harm is and Vanisavath's injuries constituted great bodily harm.

¶ 51      The trial court then allowed trial counsel the opportunity to respond to defendant's additional complaints. Counsel stated he believed an instruction on great bodily harm was given to the jury. As to defendant's other complaints, counsel asserted defendant was not "trained in the law" and did not know "how to make decisions on these cases." Further, counsel noted defendant "did not deem it necessary to come and help in his defense at any time." Counsel asserted, although he had not reviewed the transcripts "over and over again," he had conducted many trials and, in this case, "used everything that I could without having the benefit of him bothering to be concerned about his own trial."

¶ 52      After its review, the trial court found "the allegations do not amount to ineffective assistance of counsel." The court stated, in relevant part, as follows:

> "[Defendant] concedes that he had no contact with [trial counsel]
> between [December 19, 2014,] and early March of 2015. That would
> have included the time of one month before the actual trial which is,

of course, when a lot of actual trial preparation takes place. As I do recall, the State had a very strong case. Ms. Vanisavath had significant injuries regardless of what she might write or testify to. I do recall that she testified that she was battered by [defendant]. As I recall, [trial counsel] did the best he could during the course of the trial. He struck jurors, cross-examined the witnesses, moved for a directed verdict, made a closing argument and so on. In terms of specific allegations, again, [trial counsel] indicated today that the defendant never made any attempt to review his police reports, even though he was out on bond[.] *** Regarding the letter from Ms. Vanisavath, that is somewhat troubling to the [c]ourt. It's not clear as to whether or not [trial counsel] had a copy of that letter. In terms of it's [*sic*] contents, again, I don't find them necessarily to be inconsistent with her trial testimony. If [trial counsel] did have the letter, it could have been a matter of trial strategy for him to not use the letter for purposes of cross."

¶ 53      Defendant again appealed.

¶ 54      G. Subsequent Appellate Proceedings

¶ 55      In May 2019, this court agreed with defendant's argument suggesting the matter should be remanded because the trial court both improperly ruled on the merits of defendant's *pro se* claim of ineffective assistance and failed to inquire into the factual basis of all of defendant's complaints about his trial counsel's performance. *People v. Wilson*, 2019 IL App (4th) 180214,

- 20 -

¶ 21. As a result, we again declined to reach defendant's other claims on appeal, noting the result from the proceedings on remand could render those claims moot. *Id.* ¶ 25. We reversed the trial court's judgment following our initial remand and, because it was the second time this court had addressed the issue, remanded with directions for the trial court to appoint defendant new counsel and then allow appointed counsel the opportunity to investigate defendant's claim of ineffective assistance of counsel and take whatever action appointed counsel deemed appropriate. *Id.* ¶ 29.

¶ 56                                  H. Subsequent Remand Proceedings

¶ 57            In August 2019, the trial court appointed new counsel to represent defendant.

¶ 58            In October 2019, defendant, through remand counsel, filed a motion for a new trial. The motion alleged remand counsel had examined defendant's *pro se* complaints about his trial counsel's performance "by examining the court filings and record of proceedings" and found the merits of those complaints could not be evaluated without further inquiry at a hearing. The motion further alleged counsel was adopting defendant's *pro se* complaints "for the purpose of exploring their merit at a future hearing."

¶ 59            At a status hearing that same month, remand counsel informed the trial court he was adopting defendant's *pro se* complaints. The court asked if those complaints could be gleaned from the court file, to which counsel stated, "Yes, as specifically what was filed on May 14, 2015."

¶ 60            In November 2019, the State filed a detailed response to defendant's motion for a new trial. The State acknowledged defendant made several written complaints about his trial counsel's performance in his May 2015 motion as well as several oral complaints about his trial counsel's performance during the March 2018 hearing. The State recited each of defendant's written and oral complaints and explained why they were meritless. With respect to defendant's

- 21 -

oral complaint that counsel failed to impeach Vanisavath with a prior felony conviction from Indiana, the State noted Vanisavath "appear[ed] to have a 2010 conviction out of Marion County, IN for the Class D felony of Possession of Marijuana Greater Than 30 Grams."

¶ 61 That same month, the trial court held a hearing on defendant's motion for a new trial. Remand counsel acknowledged he was adopting the complaints in defendant's *pro se* motion and then called two witnesses, defendant and defendant's trial counsel.

¶ 62 Defendant testified he bonded out immediately after being arrested and had one meeting with trial counsel in counsel's office and then "saw him in court." Defendant followed up with phone calls, to which counsel did not respond, and unscheduled visits to counsel's office, during which counsel was not present. Defendant testified he and his trial counsel discussed pursuing a claim of self-defense and having him testify on the first day they met. Defendant testified he became aware of Vanisavath's written statement only after his trial and he did not discuss Vanisavath's prior felony conviction with counsel.

¶ 63 On cross-examination, defendant testified he mentioned a possible witness, Tiara Riley, to counsel during their first meeting and told counsel Riley was in the home when Vanisavath came home but not present when the altercation occurred.

¶ 64 Trial counsel testified he recalled meeting with defendant "maybe once" and defendant's "main thing was, she's not gonna show up." Counsel testified he decided not to assert self-defense at trial because defendant was not present and Vanisavath's injuries, specifically the significant bruising to her back, were inconsistent with self-defense. Counsel testified, after having had reviewed defendant's file, he learned he did in fact receive Vanisavath's written statement prior to trial but decided not to use it for impeachment purposes because:

"One, the victim in this case was no where to be found. She was—I think there was a—a forthwith subpoena on her at the time for failure to appear. I couldn't find her. I'm not going to use a statement that I can't even verify was made by this particular person.

Another reason, and the most important one, if I would have used that, tried to use that to impeach her testimony and she said that [defendant] made her write it, that would have been another charge besides his violation of bail bond that was coming on."

Counsel also testified he attempted to find Vanisavath to get a recorded statement but was unable to locate her. Counsel testified he believed there were no grounds to file a posttrial motion.

¶ 65       On cross-examination, trial counsel testified he did not recall hearing about Riley and believed there would be no use in calling a witness who was not present at the time of the altercation. Counsel testified his opening statement was focused on the State's burden and left the door open to see if something of use could be elicited at trial. Counsel believed any possible evidentiary objections at trial either did not have a sound basis or would negatively draw the jury's attention to the objectionable issues. Counsel believed he sufficiently addressed the officer's identification by suggesting the identification was based upon him seeing the photograph and not defendant. Counsel testified he did not request instruction for great bodily harm because there was no legal definition and it was a matter for the trier of fact to decide.

¶ 66       During arguments, remand counsel acknowledged there had been several complaints made throughout the various proceeding but focused "on two that I believe are actually meritorious here." Remand counsel argued trial counsel's failures to assert self-defense and to

- 23 -

impeach Vanisavath with her written statement amounted to ineffective assistance. The State disagreed, arguing defendant would not have been entitled to a jury instruction on self-defense as Vanisavath's injuries established any force used by defendant was not proportionate, and the absence of cross-examination concerning the letter was reasonable trial strategy as counsel did not know what Vanisavath would say about the letter. The State also briefly addressed various other complaints by defendant and argued they were meritless.

¶ 67        The trial court, after considering the testimony presented, the prior oral statements of defendant and his counsel, Vanisavath's letter, defendant's motion for a new trial, the State's response to defendant's motion for a new trial, and the arguments of counsel, rejected defendant's claim of ineffective assistance and denied his motion for a new trial. The court specifically found both defendant's written and oral complaints about his trial counsel's performance were meritless.

¶ 68        This appeal followed.

¶ 69                                II. ANALYSIS

¶ 70        On appeal, defendant argues (1) the State invaded the purview of the jury by improperly defining great bodily harm during its closing argument and telling the jury it could not determine what constitutes great bodily harm and (2) the trial court erred when it denied his motion for a new trial because he established his trial counsel rendered ineffective assistance. The State disagrees with both of defendant's arguments.

¶ 71                       A. The State's Closing Argument

¶ 72        Defendant argues the State invaded the purview of the jury by improperly defining great bodily harm during its closing argument and telling the jury it could not determine what constitutes great bodily harm. In support of his argument, defendant cites the following remarks

- 24 -

from the State's initial and rebuttal arguments: (1) Vanisavath's injuries "clearly constitute great bodily harm"; (2) Vanisavath's injuries were numerous, all over her body, included lacerations which required medical intervention, or sutures to close, and left permanent scarring; (3) Vanisavath's injuries were more than a paper cut or redness, and "[t]hey're what refer [*sic*] to, under the law, as great bodily harm"; (4) bodily harm is "anything as slight as temporary pain or redness," and Vanisavath's injuries "certainly [went] beyond pain and redness and constitutes great bodily harm under the law"; (5) Vanisavath had a "lasting injury" which required "medical intervention to treat" and "so, it constitutes great bodily harm"; and (6) "It's not for you to decide what great bodily harm is, but it's something beyond bodily harm."

¶ 73    Defendant concedes his argument is forfeited due to his failure to raise the issue before the trial court but asserts his forfeiture may be excused under the plain-error doctrine. The plain-error doctrine provides a "narrow and limited exception" to the general rule of forfeiture. *People v. Reese*, 2017 IL 120011, ¶ 72, 102 N.E.3d 126. Under the plain-error doctrine, a reviewing court may disregard a defendant's forfeiture and consider an unpreserved claim of error in two circumstances:

> "(1) where a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error and (2) where a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the

closeness of the evidence." (Internal quotation marks omitted.) *People v. Harvey*, 2018 IL 122325, ¶ 15, 115 N.E.3d 172. The defendant bears the burden of persuasion in establishing plain error. *People v. Wilmington*, 2013 IL 112938, ¶ 43, 983 N.E.2d 1015.

¶ 74    We turn first to whether defendant has shown a clear or obvious error occurred. *People v. Eppinger*, 2013 IL 114121, ¶ 19, 984 N.E.2d 475. "Prosecutors are afforded wide latitude during closing argument and may properly comment on the evidence presented and reasonable inferences drawn from that evidence, respond to comments made by defense counsel that invite a response, and comment on the credibility of a witness." *People v. Pope*, 2020 IL App (4th) 180773, ¶ 80, 157 N.E.3d 1055. Prosecutors must not, however, misstate the law. *People v. Ramsey*, 239 Ill. 2d 342, 441, 942 N.E.2d 1168, 1223 (2010). When reviewing a closing argument for error, we must consider the argument "in its entirety, and the challenged remarks must be viewed in their context." *People v. Glasper*, 234 Ill. 2d 173, 204, 917 N.E.2d 401, 420 (2009).

¶ 75    To prove defendant guilty of aggravated domestic battery as charged in this case, the State had to prove, *inter alia*, defendant "knowingly cause[d] great bodily harm." 720 ILCS 5/12-3.3(a) (West 2012). The term "great bodily harm" is not susceptible to a precise legal definition. *People v. Kinnerson*, 2020 IL App (4th) 170650, ¶ 69. It "turns squarely upon the *extent* of the harm inflicted." (Emphasis in original.) *People v. Willett*, 2015 IL App (4th) 130702, ¶ 53, 37 N.E.3d 469. Great bodily harm requires harm greater or more serious than the bodily harm needed to satisfy an ordinary battery. *People v. Daniels*, 2016 IL App (4th) 140131, ¶ 101, 58 N.E.3d 902. In *People v. Mays*, 91 Ill. 2d 251, 256, 437 N.E.2d 633, 635-36 (1982), our supreme court defined the bodily harm needed to satisfy an ordinary battery as "some sort of

physical pain or damage to the body, like lacerations, bruises or abrasions, whether temporary or permanent." Because great bodily harm requires harm greater or more serious than the bodily harm needed to satisfy an ordinary battery, "simple logic dictates that the [harm] must be more severe than that set out in the *Mays* definition." *People v. Figures*, 216 Ill. App. 3d 398, 401, 576 N.E.2d 1089, 1092 (1991). Ultimately, the issue of whether the harm inflicted upon a victim rises to the level of great bodily harm is a question for the trier of fact. *People v. Garry*, 323 Ill. App. 3d 292, 297, 752 N.E.2d 1244, 1248 (2001).

¶ 76        After reviewing the closing arguments in their entirety and the challenged remarks in their context, we find the State did not invade the purview of the jury. The State properly informed the jury of the law concerning great bodily harm, that (1) the term "great bodily harm" was not defined under the law, (2) it was not the jury's responsibility to define the term but rather to consider the harm caused to Vanisavath and determine whether that harm amounted to great bodily harm, and (3) the jury may consider, in making its determination of whether the harm caused to Vanisavath amounted to great bodily harm, the definition of bodily harm and whether they believed the harm to Vanisavath went beyond that definition. The State also properly commented on the evidence presented, that Vanisavath's injuries were numerous, all over her body, and included lacerations which required surgical sutures to close and resulted in permanent scaring. Last, the State properly argued the evidence showed Vanisavath suffered great bodily harm, that the harm caused to Vanisavath went beyond bodily harm and constituted great bodily harm. Defendant has failed to establish clear or obvious error and, therefore, we hold him to his forfeiture.

¶ 77        B. Defendant's Claim of Ineffective Assistance of Trial Counsel

¶ 78     Defendant argues the trial court erred when it denied his motion for a new trial because he established his trial counsel rendered ineffective assistance. Specifically, defendant asserts certain complaints which he raised with his counsel's performance, either individually or cumulatively, established counsel's ineffectiveness.

¶ 79     To prevail on a claim of ineffective assistance of counsel, it must be shown both (1) counsel's performance was objectively unreasonable under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *People v. Moore*, 2020 IL 124538, ¶ 29. "To establish deficiency, the defendant must overcome the strong presumption that the challenged action or inaction might have been the product of sound trial strategy." *People v. Simms*, 192 Ill. 2d 348, 361, 736 N.E.2d 1092, 1106 (2000). The defendant bears the burden of persuasion of satisfying both prongs. *Id.* at 362.

¶ 80     At the outset, the State asserts defendant forfeited those complaints about his trial counsel's performance which he failed to allege or adopt in his motion for a new trial. Defendant disagrees, contending remand counsel "did not intend" to forego his oral complaints as evidenced by counsel's assertion that a hearing was necessary to explore defendant's complaints. Alternatively, defendant contends the State forfeited its forfeiture argument by failing to raise it before the trial court, the State should be estopped from asserting its forfeiture argument because it responded to his oral complaints before the trial court, and/or his forfeiture may be excused under the plain-error doctrine. Under the circumstances presented, we elect to set aside any forfeiture by defendant and consider the merits of those complaints which defendant raises in this appeal. See *People v. Curry*, 2018 IL App (1st) 152616, ¶ 36, 100 N.E.3d 482 ("[F]orfeiture is a

- 28 -

limitation on the parties, not the court, and we may exercise our discretion to review an otherwise forfeited issue."). Accordingly, we now address each of defendant's complaints in turn.

¶ 81 First, defendant complains about his trial counsel's failure to impeach Vanisavath with her letter. Counsel explained he did not cross-examine Vanisavath with the letter, in part, because he was unable to locate and interview her prior to trial to assure defendant did not force or pressure her to compose the letter. Counsel's concerns are understandable, particularly because the letter appears to have been written during a period when Vanisavath and defendant were in contact and not attending court proceedings. On appeal, defendant suggests counsel's decision not to use the letter cannot be considered sound trial strategy because counsel did not attempt to speak with Vanisavath during the various breaks during trial to verify or alleviate his concerns. Counsel was not, however, examined about any opportunities he may have had to speak with Vanisavath during trial or why he did not do so. From the record presented, defendant has not rebutted the presumption counsel's decision not to cross-examine Vanisavath with the letter was based in sound trial strategy. Defendant's complaint is meritless.

¶ 82 Second, defendant complains about his trial counsel's failure to impeach Vanisavath with her prior felony conviction from Indiana for possession of marijuana. Counsel was not asked about the alleged conviction, nor was there any evidence introduced about the conviction, and therefore, it is not clear counsel was aware, or should have been aware, of the conviction at the time of trial. Moreover, we are unconvinced defendant was prejudiced by the absence of the introduction of such evidence where counsel elicited on cross-examination the fact Vanisavath had smoked marijuana the day of the altercation with defendant. Defendant's complaint is meritless.

- 29 -

¶ 83 Third, defendant complains about both his trial counsel's failure to cross-examine Vanisavath with her letter to flesh out evidence supporting a claim of self-defense and his counsel's failure to request a self-defense jury instruction. For the reasons previously discussed, defendant has not rebutted the presumption counsel's decision not to cross-examine Vanisavath with the letter was based in sound trial strategy. With respect to the failure to request a self-defense jury instruction, counsel testified he did not request such an instruction, in part, because Vanisavath's injuries were not consistent with self-defense. At trial, Vanisavath testified defendant repeatedly struck her in the back with a shower rod. The photographs admitted into evidence vividly depict multiple rod-shaped bruises to Vanisavath's back. On appeal, defendant suggests Vanisavath's back injuries could have occurred while she was climbing out of the bathroom window, which she may not have recalled due to her intoxication. Given the amount and severity of the injuries and the fact all witnesses testified to Vanisavath not appearing intoxicated, defendant's suggestion is entirely fanciful. Vanisavath's injuries demonstrate the force used by defendant was vastly disproportional to any danger posed by Vanisavath, and therefore, any claim of self-defense was unavailable. See 720 ILCS 5/7-1(a) (West 2012) (A defendant "is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself ***."); *People v. Morgan*, 187 Ill. 2d 500, 533, 719 N.E.2d 681, 700 (1999) ("It is well established that in order to raise a claim of self-defense, a defendant must present evidence supporting *** that the kind and amount of force actually used was necessary ***."). Because the defense was unavailable, counsel did not perform deficiently for failing to request a self-defense jury instruction. Defendant's complaint is meritless.

¶ 84        Fourth, defendant complains about trial counsel's complete absence of any prepared plan or strategy for trial. Counsel testified he pursued a defense focused on the State's burden of proof. Counsel's testimony is supported by his opening statement, cross-examination, and closing argument. Defendant's complaint is meritless.

¶ 85        Fifth, defendant complains about his trial counsel's failure to meet with him to review discovery. Defendant did not testify that he asked counsel to review the discovery with him, nor did he explain how the discovery he wished to review may have impacted his trial. From the record presented, defendant has not rebutted the presumption any decision by counsel not to review discovery with defendant was a matter of sound trial strategy. See *People v. Savage*, 361 Ill. App. 3d 750, 757, 838 N.E.2d 247, 254 (2005). Moreover, defendant has not explained how he was prejudiced by his inability to review the discovery. Defendant's complaint is meritless.

¶ 86        Sixth, defendant complains about both his trial counsel's failure to object to the State's improper closing argument and failure to tender a proposed jury instruction concerning great bodily harm considering the State's improper closing argument. As discussed above, the State's closing argument was not improper and, therefore, counsel's performance could not have been deficient for failing to object to the argument or tender a proposed instruction. Defendant's complaint is meritless.

¶ 87        Seventh, defendant complains about his trial counsel's failure to contact Riley. Defendant did not produce an affidavit or testimony from Riley. In its absence, this court cannot determine whether Riley could have provided testimony or information which may have assisted the defense. See *People v. Enis*, 194 Ill. 2d 361, 380, 743 N.E.2d 1, 13 (2000). Defendant's complaint is meritless.

¶ 88        Eighth, defendant complains about his trial counsel's failure to object to the testimony from Vanisavath's mother concerning his age when he began dating Vanisavath because it was hearsay, irrelevant, and unfairly prejudicial. Counsel testified he believed any possible evidentiary objections at trial either did not have a sound basis or would negatively draw the jury's attention to objectionable issues. Even if the testimony was objectionable, counsel's decision not to object was reasonable—objecting to the question may have given the jury the unfavorable impression the defense was trying to hide the fact defendant was older than Vanisavath when they started dating. Defendant has not rebutted the presumption counsel's decision not to object was based in sound trial strategy. Moreover, given the evidence against defendant, we are unconvinced the jury hearing defendant's age when he began dating Vanisavath may have changed the outcome of the proceedings. Defendant's complaint is meritless.

¶ 89        Ninth, defendant complains about his trial counsel's failure to object to the State's question asking Vanisavath about his absence from trial because it called for hearsay and speculation. Again, counsel testified he believed any possible evidentiary objections at trial either did not have a sound basis or would negatively draw the jury's attention to the objectionable issues. Even if the testimony was objectionable, counsel's decision not to object was reasonable— defendant's absence was obvious to the jury and objecting to the question may have given the jury the unfavorable impression the defense was trying to hide the reason for defendant's absence. Defendant has not rebutted the presumption counsel's decision not to object was based in sound trial strategy. Moreover, given the evidence against defendant, we are unconvinced the jury hearing Vanisavath's testimony concerning defendant's absence from trial may have changed the outcome of the proceedings. Defendant's complaint is meritless.

¶ 90        Tenth, defendant complains about his trial counsel's failure to object to Officer Carr's testimony indicating the man outside the window ran as soon as the man saw him because it was speculative. Again, counsel testified he believed any possible evidentiary objections at trial either did not have a sound basis or would negatively draw the jury's attention to the objectionable issues. Even if the testimony was objectionable, counsel's decision not to object was reasonable— objecting to a nonresponsive answer to a question on cross-examination would have drawn additional attention to the testimony and away from counsel's aim at showing the circumstances did not allow Officer Carr to accurately identify defendant. Defendant has not rebutted the presumption counsel's decision not to object was based in sound trial strategy. Defendant's complaint is meritless.

¶ 91        Eleventh, defendant complains about his trial counsel's failure to object to the State telling Denny about Vanisavath's testimony indicating she had scarring because it constituted an improper comment on another witnesses' credibility. The challenged testimony was not, however, a comment on Vanisavath's credibility. Rather, Denny, the physician assistant who treated Vanisavath, properly commented on the severity of Vanisavath's injuries and the likelihood they might result in permanent scarring. Defendant's complaint is meritless.

¶ 92        Twelfth, defendant complains about his trial counsel's failure to object to Officer's Carr's identification based upon a booking photograph because it introduced impermissible other-crimes evidence. Counsel testified it was part of his strategy to convey to the jury Officer Carr's only basis for his identification of defendant was previously seeing a photograph of defendant. When examining Officer Carr about the photograph, Officer Carr identified the photograph as a "booking photo." Again, counsel testified he believed any possible evidentiary objections at trial

either did not have a sound basis or would negatively draw the jury's attention to the objectionable issues. Even if the Officer Carr's testimony was objectionable, counsel's decision not to object was reasonable—objecting to the description of the photograph on cross-examination would have drawn additional attention to the description and away from counsel's aim at showing the circumstances did not allow Officer Carr to accurately identify defendant. Defendant has not rebutted the presumption counsel's decision not to object was based in sound trial strategy. Defendant's complaint is meritless.

¶ 93　　　　Thirteenth, defendant complains about his trial counsel's failure to object to the State's improper leading of Vanisavath when discussing the photographs. The leading questions presented information already presented to the jury—that Vanisavath reported being beaten by defendant and that she did not initiate the physical altercation. Objecting to the questions would have run the risk of appearing obstructionist to the jury. Defendant has not rebutted the presumption counsel's decision not to object was based in sound trial strategy. Defendant's complaint is meritless.

¶ 94　　　　Last, defendant complains about trial counsel's failure to file a posttrial motion based upon the various trial objections to preserve the issues for review. Counsel testified he did not file a posttrial motion, in part, because there were no grounds for doing so. Having found defendant's various complaints are meritless, counsel's decision not to file a posttrial motion could not have prejudiced defendant. Defendant's complaint is meritless.

¶ 95　　　　After considering defendant's various complaints with his trial counsel's performance both individually and cumulatively, we find trial court did not err in rejecting defendant's claim of ineffective assistance and denying his motion for a new trial.

- 34 -

¶ 96                     III. CONCLUSION

¶ 97        We affirm the trial court's judgment.

¶ 98        Affirmed.

¶ 99        JUSTICE TURNER, specially concurring.

¶ 100       I agree we should affirm the trial court's judgment. I write separately to note my disagreement with portions of the majority's analysis.

¶ 101       First, counsel was deficient in failing to impeach Vanisavath with her prior felony conviction. The State disclosed Vanisavath's felony record in discovery, and there could not have been any trial strategy beneficial to defendant not to use it.

¶ 102       Second, it is also my view counsel was deficient in failing to impeach Vanisavath with her letter addressed to the prosecutor. It was one of the few openings available to challenge the State's case in this trial *in absentia*. If counsel was not sure what Vanisavath would say, he should have at least attempted to speak with her before she testified. The record also does not appear to reflect counsel made any attempt to locate the notary public.

¶ 103       Third, the prosecutor misstated the law in her closing argument. She defined bodily harm, "under the law," as "anything as slight as temporary pain or redness," and then argued anything beyond that constituted great bodily harm. I am aware of no authority which permits the State to argue to a jury what, as a matter of law, constitutes bodily harm. Whether a victim endured bodily harm, great bodily harm, or neither, are questions of fact for the jury to decide.

¶ 104       Notwithstanding the above, the evidence in this case was not closely balanced as it overwhelmingly established defendant's guilt beyond a reasonable doubt. Thus, I concur in affirming defendant's convictions.