(No. 54800.—

## THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ROBERT LEE MAYS, Appellee.

*Opinion filed June 1, 1982.*

Tyrone C. Fahner, Attorney General, of Springfield, and James T. Teros, State's Attorney, of Rock Island (Herbert Lee Caplan, Melbourne A. Noel, Jr., and David Bindi, Assistant Attorneys General, all of Chicago, and John X. Breslin and Terry A. Mertel, of the State's Attorneys Appellate Service Commission, both of Ottawa, of counsel), for the People.

Robert Agostinelli, G. Joseph Weller, Peter A. Carusona, and Michael Filipovic, of the Office of the State Appellate Defender, of Ottawa, for appellee.

JUSTICE SIMON delivered the opinion of the court:

The defendant, Robert Lee Mays, was charged by information with rape. After a trial by jury, he was convicted and sentenced to 10 years in prison by the circuit court of Rock Island County.

On appeal, the defendant made two arguments: first, that the trial court erred in refusing his tendered jury instruction for the offense of battery, and second, that because the tape recorder used to record proceedings failed to operate during closing arguments he was effectively denied his right to appellate review on the issues arising from those arguments. In a split decision, the appellate court agreed with the defendant's first argument. (93 Ill. App. 3d 352.) Holding that battery is an included offense of rape, which therefore must be instructed upon, it reversed the defendant's conviction and remanded the cause for a new trial. For reasons set forth below, we now reverse the appellate court and reinstate the judgment entered against the defendant by the circuit court.

The complaining witness testified that on the evening of July 5, 1978, she and a neighbor went in separate cars to a neighborhood tavern in Moline. There they met another friend and sat at the bar conversing and drinking. During the evening, she got up to go to the ladies' room, and when she returned she noticed the defendant speaking for a moment to her companions.

When her friends left at approximately 12:30 a.m., she remained at the bar to finish her drink. The defendant came up to the bar and sat with her. She had never seen him before that day, but assumed from what she had observed earlier that he was a friend of her neighbor. The two of them talked for a half an hour. When at 1 a.m. the manager announced the bar was closing, she got up to leave, and the defendant followed her outside, asking for a ride down the street to a nearby tavern which kept

later hours. She agreed.

According to the complaining witness, when the two arrived in the parking lot of the second tavern, the defendant grabbed her car keys. When she tried to escape, he beat her until she was unconscious. She testified that when she regained consciousness, the defendant pulled off her clothes and raped her. He then ran from the car.

The defendant's story differed from the complaining witness'. He testified that he had known the complaining witness for some time. On the night of July 5, 1978, he saw her at the tavern and offered to buy drugs for her. He told the jury that he did not really intend to buy any drugs for her. He was only deceiving her and planning to take her money.

At his request, she drove him to a nearby tavern where, he told her, he could get the drugs. Before he would get them for her, however, he told her he needed to see her money. She gave him the money, and he counted about $190 to $200. When he attempted to leave the car with the money, she became suspicious and demanded it back. The defendant testified he then grabbed the complaining witness by the neck and hit her with the back of his hand. He fled with her money, but denied ever having raped her.

The defendant's major contention of error concerns the court's refusal of the instruction for battery he tendered. The refused instruction read, "A person commits the crime of battery who by any means knowingly or intentionally causes bodily harm to another person." No instruction for the type of battery defined as physical contact of an insulting or provoking nature (Ill. Rev. Stat. 1977, ch. 38, par. 12—3(a)(2)) was requested, and we do not decide whether had such an instruction been tendered in this case it would have been properly rejected. The

defendant argues that battery is an included offense of the rape he was charged with, and that he was therefore entitled to an instruction on it.

Because the arguments of both parties turn on the concept of "included offense," our first task is to define this term. The Criminal Code of 1961 states in pertinent part, " 'Included offense' means an offense which (a) Is established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged." (Ill. Rev. Stat. 1977, ch. 38, par. 2—9.) The concept is employed in determining whether a party is entitled to an instruction for a crime other than the one charged. (See, *e.g., People v. Cramer* (1981), 85 Ill. 2d 92; *People v. Smalley* (1976), 43 Ill. App. 3d 600.) The definition of "included offense" does not indicate which of the following is determinative in deciding if a particular offense is an included offense of another: the abstract statutory definition of the greater crime; the greater crime as it is alleged in the indictment or other charging document; or the greater crime as its necessary elements are proved at trial. In *People v. Cramer* this court recently approved the use of the second test, while at the same time pointing out that the first test was seldom used and expressing no opinion on the propriety of the third test. Under the facts of this case, however, we reach the same result no matter which test is applied.

Applying the first test, we find that the Criminal Code of 1961 defines rape:

"Rape.

(a) A male person of the age of 14 years and upwards who has sexual intercourse with a female, not his wife, by force and against her will, commits rape. Intercourse by force and against her will includes, but is not limited to, any intercourse which occurs in the following situations:

> (1)  Where the female is unconscious; or
>
> (2)  Where the female is so mentally deranged or deficient that she cannot give effective consent to intercourse." (Ill. Rev. Stat. 1977, ch. 38, par. 11—1.)

Battery, on the other hand, can be committed in two ways: first, by intentionally or knowingly, without legal justification and by any means, causing bodily harm to an individual, and second, under the same circumstances, making physical contact of an insulting or provoking nature. Ill. Rev. Stat. 1977, ch. 38, par. 12—3.

As noted above, however, defendant requested an instruction only on battery by bodily harm. Although it may be difficult to pinpoint exactly what constitutes bodily harm for the purposes of the statute, some sort of physical pain or damage to the body, like lacerations, bruises or abrasions, whether temporary or permanent, is required. Otherwise there would be no need for the other type of battery, contact of an insulting or provoking nature. There is no such requirement in the definition of rape. It is clear then that under an analysis based on the abstract definitions of both crimes, battery based on bodily harm is not an included offense of rape.

The defendant, relying on *People v. Cramer*, argues that we should determine what is an included offense by referring to the offense as charged in the information rather than from the general statutory definition. Because the information filed by the State against the defendant in the case contains very little detail, simply reciting the requirements of the statute, applying this test in this case offers little assistance to the defendant.

The information states that on July 6, 1978, Robert Lee Mays "committed the offense of rape in that the said defendant, a male person of the age of 14 years and upwards, had sexual intercourse with [the complaining witness], a female not his wife, by force and against her will." The defendant contends that since the information

alleges rape by force rather than rape of an unconscious or incompetent person, battery based on bodily harm would be an included offense. Bodily harm, he argues, is necessarily implicit in any showing of force. We do not agree. As observed above, the element of bodily harm necessary to prove battery by bodily harm must involve physical pain or damage to the body. Proof of force requires no such showing. Although bodily harm in the above sense often occurs during a rape, the State could have proved the facts of the information without ever having shown that the complaining witness suffered physical pain, lacerations, bruises, abrasions, or the like. Thus even under the test preferred by *People v. Cramer,* battery by bodily harm is not an included offense of rape.

Next, the defendant invites this court to endorse the third test—that certain crimes whose elements are shown by evidence at trial must be instructed upon, if requested by the defendant. The defendant cites a line of Federal cases to illustrate this rule. (*United States v. Johnson* (9th Cir. 1980), 637 F.2d 1224; *United States v. Pino* (10th Cir. 1979), 606 F.2d 908; *United States v. Whitaker* (D.C. Cir. 1971), 447 F.2d 314.) These cases reject the notion that because the State can only request instructions on offenses necessarily included in the greater offense as charged in the indictment, the defendant should be similarly limited. They hold that such a concept of mutuality is an anomaly. Restrictions on the State's ability to request an instruction for a lesser offense stem from the defendant's due process right to know the nature of the charges against him. The defendant's right to instructions stems from an attempt to give him the full benefit of the reasonable doubt standard; the State has no offsetting due process right of notice. As such, these Federal cases adopt a different test for defendant-requested instructions on lesser offenses, the inherent-relationship test.

Even if we were to follow the cases defendant cites and adopt the inherent-relationship test, or something like it, the instruction the defendant tendered would not be appropriate in this case. By "inherent relationship," the Federal courts of appeals meant that the two offenses "must relate to the protection of the same interest, and must be so related that in the general nature of these crimes, though not necessarily invariably, proof of the lesser offense is necessarily presented as part of the showing of the commission of the greater offense." (*United States v. Whitaker* (D.C. Cir. 1971), 447 F.2d 314, 319.) Under such a test, a defendant accused of involuntary manslaughter for a death caused by his driving might be entitled to an instruction for careless driving, if a factual issue as to whether the defendant's actions were sufficiently culpable to convict for manslaughter existed. (*United States v. Pino* (10th Cir. 1980), 606 F.2d 908.) The fact that careless driving requires that the defendant's actions take place while driving a car and that involuntary manslaughter does not was not considered to be sufficiently distinctive to excuse an instruction on careless driving. On the other hand, it would be inappropriate to allow a defendant accused of selling heroin to insist upon an instruction for violation of the blue laws simply because at trial it became apparent that the sale occurred, if at all, on a Sunday. There is no inherent relationship between the two crimes. Similarly, although perhaps less plainly so, we do not believe the rape defendant was charged with and battery by bodily harm have such an inherent relationship. They protect different interests. Rape may occur even in those instances when no apparent bodily harm to the victim results. Battery by bodily harm is not simply a lesser version of rape. It is a wholly different type of crime. For that reason, no instruction was required on battery based on bodily harm in this case.

The second issue raised by the defendant concerned the adequacy of the record. At trial, both parties waived their right to have a court reporter record closing arguments. Instead, a tape recorder was used. Unfortunately, it malfunctioned, and so there is no verbatim transcript of what took place. No bystander's report was certified, because the judge who presided over the trial had no present recollection of the argument at the time that it was discovered that a bystander's report would be needed. The defendant now claims that this predicament effectively denies him his right to appellate review and therefore constituted reversible error.

We do not agree. Defendant submitted a proposed bystander's report and was prepared to use it on appeal. It would be insupportable to hold for defendant on the ground that his report was not certified when, had the trial judge certified the report, the defendant's conviction would have been upheld because nothing in the report showed error had been committed.

The only alleged errors in oral argument preserved in the defendant's motion for a new trial are also included in the proposed bystander's report submitted for certification. Neither of them is impressive. The defendant complains that the court erred in allowing the State to refer to the complaining witness as a Sunday school teacher and a member of the church council. This fact had been introduced into evidence by the State to explain why the complaining witness did not immediately inform the police of rape. She testified that as a Sunday school teacher and a member of the Ecumenical Council of Churches, she feared for her reputation. The defendant did not object. During closing argument, the State made references to that fact again in discussing the complaining witness' credibility. We believe this is permissible. The witness' credibility had been in issue and therefore the State may

argue for it. (See *Jackson v. United States* (D.C. Cir. 1966), 359 F.2d 260, *cert. denied* (1966), 385 U.S. 877, 17 L. Ed. 2d 104, 87 S. Ct. 157; *Brummett v. State* (Tex. Crim. App. 1964), 384 S.W.2d 708; *cf. People v. Moore* (1916), 276 Ill. 392 (prosecutor has right to assume and argue truth of State's case).) Although inflammatory remarks are certainly to be avoided, argument will not be limited merely because it places the defendant in a bad light. See *People v. Heidman* (1957), 11 Ill. 2d 501, 511.

The second alleged error concerned the State's request for a conviction from the jury in order to protect other women in this area. The defendant objected to this remark during closing argument, and the circuit court sustained his objection. Because the defendant received the ruling he asked for, there is no need to further address the issue.

Finding no error at trial, we reverse the appellate court and affirm the circuit court.

*Appellate court reversed;*
*circuit court affirmed.*