THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DENNIS STORY, Defendant-Appellant.

First District (4th Division) No. 82—2366

Opinion filed May 19, 1983.

Steven M. Levin, of Hayman, Kirshenbaum & Levin, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Paula Carstensen, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE ROMITI delivered the opinion of the court:

Defendant Dennis Story was indicted for attempted rape and unlawful restraint. (Ill. Rev. Stat. 1981, ch. 38, pars. 8—4, 11—1, 10—3.) Following a bench trial he was found guilty of both offenses; the unlawful restraint was then merged into the attempted rape. Defendant filed a post-trial motion challenging the conviction. In response the court vacated the attempted rape conviction and entered a finding of guilty of battery based upon evidence of physical contact of an insulting and provoking nature with the victim. (Ill. Rev. Stat. 1981, ch. 38, par. 12—3(a)(2).) The court then sentenced defendant to one year probation.

On appeal defendant contends that the battery conviction is legally inconsistent with the acquittal of attempted rape. His theory is that since the trial court revealed doubt as to the adequacy of proof on the issues of lack of consent and use of force, he was either guilty

as charged or not guilty, but he argues that he could not be found guilty of battery. The State's position is that battery is a lesser-included offense of attempted rape and the conviction should be upheld.

The complainant testified that on March 24, 1982, at 9:15 a.m., as she sent three of her children to school, defendant, a telephone repairman, arrived to make a service call. Defendant showed her his identification and she let him into the apartment. At that time there were two children still at home, ages three years and 15 months. Complainant directed defendant to the malfunctioning telephone jack in the hallway, then went to retrieve her clothing from the bedroom since she was wearing only a knee-length nightgown. As she reentered the hall on her way to the bathroom, defendant grabbed her hands and pulled her toward him. Defendant asked her if she was mad at him, to which she replied "no." Complainant's three-year-old son approached her. She asked him if he wanted to go outside. He said he did, so complainant disengaged herself from defendant and returned to the bedroom to get her son's shoes. There she found a piece of toilet tissue and a pen on the floor, and wrote a note (which was introduced into evidence as People's exhibit No. 1) saying, "Jan, come quick." She put her son's shoes on him and told him to go to her friend Jan's apartment in the same building. Defendant then entered the bedroom and held complainant from behind around the waist with his left hand. She said she could feel him unfasten his trousers with his right hand. Defendant again asked her if she was mad at him; she said "no." Defendant tried to lay her on the bed, but she pushed away from the bed with her foot. Still holding her her by the waist, defendant took her into the bathroom and bent her over. Her nightgown rose above her thighs and she could feel defendant rub his penis along her thighs and buttocks. Complainant felt defendant loosen his grasp on her waist; she looked up and saw Jan's three-year-old daughter standing in the doorway and heard Jan call her name from the kitchen. Complainant ran into the kitchen crying and said "the telephone man." Jan told her to go to her apartment. Complainant acknowledged that defendant did not have a weapon of any kind in his possession and did not verbally threaten her and that she never told him she did not want him to hold her. However, she asserted that once she told him, "Don't. Stop." She said she struggled a little bit but that since she was only five feet tall and weighed 104 pounds, while defendant was bigger, she felt "he would know that I didn't want him to do anything."

Jannette Lindsey testified that complainant's son came to her apartment with a note stating, "Jan, come quick." She dressed her

three children and returned to complainant's apartment about five minutes later. Her daughter ran into the apartment while she called complainant's name from the kitchen. Complainant came into the kitchen dressed in a nightgown; she was crying and shaking. She said "the telephone man." Jan asked if it was safe to go inside, and complainant shook her head no. Complainant went to Jan's apartment while Jan remained in the kitchen calling to her daughter. Defendant then came to the back door buckling his pants and sweating. He asked Jan where the complainant had gone and said he did not want her (complainant) to talk to his employer at Illinois Bell because he had done something he "had no business doing" and could lose his job. Jan returned home, calmed complainant and convinced her to call the police.

Chicago police officer Sidney Hill testified that at 10 a.m. on the date in question, he responded to the scene and arrested defendant. He subsequently saw complainant, who was very upset, crying and unable to answer his questions.

Defendant testified on his own behalf. He acknowledged that he made a telephone repair service call at complainant's apartment, but denied the story related by complainant. Defendant said he went to the basement to check the telephone lines, then went to the complainant's apartment. She sent three of her children to school, then gave him a chair to stand on to check the telephone wires above the bathroom door. Jannette Lindsey then came in the back door and complainant, wearing only a red nightshirt, ran out of the apartment. He asked Jan where complainant went; she replied "upstairs." Defendant decided to wait since she had left the baby unattended. After 15 minutes defendant called his supervisor who told him he was not responsible for the child and to return to work. Defendant then went to retrieve additional equipment from his truck but was arrested by Officer Hill.

The trial court reviewed the evidence, then ruled that the State had met its burden of proving defendant guilty beyond a reasonable doubt of attempted rape and unlawful restraint, which merged into attempted rape.

In his post-trial motion defendant argued, *inter alia*, that (1) it was incongruous to find him guilty beyond a reasonable doubt since at the preliminary hearing there had been a finding of no probable cause; (2) that the testimony of the State's witnesses was not credible; and (3) assuming *arguendo* that the State's witnesses were credible, they presented no evidence that the acts charged were committed by force or against the will of complainant.

Following arguments on the motion, the trial court stated:

"I agree that the force used here is not the degree the Court is ordinarily confronted with. We are talking about attempt rape or rape.

\* \* \*

There were physical indicates that she [complainant] was not in accord with whatever was being tried. I am mindful that some of these acts could be foreseen or taken to mean consent, but that's rebutted by both her physical actions and by her conduct and writing the note via her child; getting to Jannette Lindsey her friend, who comes back to her home at about—her apartment, about five or ten minutes [later].

Therefore, your Motion for a New Trial will be respectfully denied. You also requested that the Court reconsider the finding that the Court entered and that I will do.

\* \* \*

Under all the attendant circumstances, then having reconsidered all the facts, though I still feel \*\*\* they \*\*\* do support the finding I have entered, I will change and alter my finding and find the defendant guilty of battery in that there was a physical contact of an insulting and provoking nature with the victim in this cause.[1]

It is a Class A misdemeanor. I would vacate my finding \*\*\* [of] guilty of the attempt rape and \*\*\* [find] the defendant guilty of battery."

The prosecution then inquired as to the reason for the altered findings. The trial court responded:

"I feel that there is a legitimate question as to what the degree of force was sufficient being mindful of all the attendant circumstances in this cause. I would enter the finding I have indicated."

We believe that the dispositive issue in this case is whether battery was a viable conviction where defendant was charged only with attempted rape and unlawful restraint.

■■ A criminal indictment must apprise an accused of the exact crime with which he is charged so that he may adequately prepare his defense. (*People v. Ballard* (1978), 65 Ill. App. 3d 831, 834, 382 N.E.2d 800, *cert. denied* (1979), 444 U.S. 925, 62 L. Ed. 2d 180, 100 S. Ct. 262.) The indictment for a particular offense serves as an in-

---

[1]This definition of battery is derived from section 12—3(a)(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 12—3(a)(2)).

dictment for all included offenses even though the latter are not specifically set forth in that indictment. (*People v. Vasquez* (1981), 97 Ill. App. 3d 1142, 1143, 424 N.E.2d 42.) The Criminal Code of 1961 defines "included offense" to mean:

"*** an offense which
(a) Is established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged ***." (Ill. Rev. Stat. 1981, ch. 38, par. 2—9(a).)

A conviction of a lesser offense cannot stand where the accused was indicted only for a greater offense which does not contain all the elements of the offense of which he was convicted. (*People v. Ryan* (1981), 97 Ill. App. 3d 1071, 1074, 424 N.E.2d 20; *People v. Vasquez* (1981), 97 Ill. App. 3d 1142, 1144.) An analysis of the indictment in this case demonstrates that it did not include all the elements of battery, so the latter is not an included offense.

■ The attempted rape indictment charged that, with the intent to commit the offense of rape, defendant attempted to compel (complainant) to submit to an act of sexual intercourse, by force and against her will. The unlawful restraint charge alleged that defendant knowingly without legal authority detained complainant. It is unnecessary to prove that an accused touched the victim in order to sustain a conviction for either attempted rape or unlawful restraint. To the contrary, that is an element of battery under section 12—3(a)(2) of the Criminal Code of 1961 which provides:

"A person commits battery if he intentionally or knowingly without legal justification and by any means *** (2) makes physical contact of an insulting or provoking nature with an individual." (Ill. Rev. Stat. 1981, ch. 38, par. 12—3(a).)

Therefore battery is not a lesser-included offense of attempted rape.[2] Since defendant was not charged with battery, the conviction for battery was not a permissible alternative and must be reversed.

We note that in its brief the State has relied on *People v. Pettus* (1980), 84 Ill. App. 3d 390, 405 N.E.2d 489, wherein the appellate court in the Fourth District referred to battery as a lesser-included of-

---

[2]In *People v. Mays* (1982), 91 Ill. 2d 251, 255-58, 437 N.E.2d 633, our supreme court held that battery by bodily harm (Ill. Rev. Stat. 1981, ch. 38, par. 12—3(a)(1)), is not a lesser-included offense of rape because rape may be committed where no apparent bodily harm to the victim results. (91 Ill. 2d 251, 258.) The issue whether battery by physical contact of an insulting or provoking nature may be a lesser-included offense of rape was not raised in *Mays*, and the court explicitly declined to address that question.

fense of attempted rape. However, in *Pettus*, the defendant, who had been charged with attempted rape, tendered a jury instruction on battery without objection by the State. The jury then convicted him of both attempted rape and battery based upon the same acts. The appellate court vacated the battery conviction because in that case the same evidence sustained both the attempted rape and the battery. The propriety of tendering the battery instruction was not an issue in *Pettus*. We believe that a more accurate rationale for vacating the battery conviction would have been the prohibition against multiple convictions arising out of the same acts prescribed by *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.

For the reasons set forth above, the judgment of the circuit court is reversed.

Judgment reversed.

LINN and JIGANTI, JJ., concur.