2021 IL App (1st) 181587-U

No. 1-18-1587

Order filed May 6, 2021

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 6898 |
| | ) | |
| LARRY DAVIS, | ) | Honorable |
| | ) | Ramon Ocasio III, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE GORDON delivered the judgment of the court.
Justices Lampkin and Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We vacate defendant's sentence on aggravated battery (count V) pursuant to the one-act, one-crime doctrine where it is a lesser-included offense of his home invasion (count IV) conviction, and otherwise affirm his convictions.

¶ 2    Following a bench trial, defendant Larry Davis was found guilty of four counts of home invasion and two counts of aggravated battery. The trial court merged the home invasion counts into one and sentenced defendant to 31 years' imprisonment on that count. It also sentenced defendant to six years and two years on the aggravated battery counts, all three sentences to be

served consecutively. On appeal, defendant argues (1) the mandatory consecutive sentence imposed on one aggravated battery count should be vacated because there was insufficient evidence the victim suffered severe bodily injury and the court did not find such injury; (2) his mandatory consecutive sentences on both aggravated battery counts must be vacated because the trial court failed to (a) specify the counts on which he was sentenced, and (b) make necessary findings that each victim suffered severe bodily injury; and (3) one aggravated battery conviction must be vacated under the one-act, one-crime rule as it is a lesser-included offense of the home invasion conviction. For the following reasons, we vacate the sentence on one of the aggravated battery counts and affirm in all other respects.

¶ 3    Defendant was charged by indictment with 17 offenses related to an incident that occurred on or about April 1, 2015.[1] The State proceeded to trial on four counts of home invasion and three counts of aggravated battery. Relevant here, count IV, for home invasion, alleged that defendant, not being a peace officer acting in the line of duty, without authority, knowingly entered the dwelling place of Maurice McDowell, and he knew or had reason to know that one or more persons were present, and during the commission of the offense he personally discharged a firearm that proximately caused great bodily harm to Charles Anthony Charrier (720 ILCS 5/19-6(a)(5) (West 2014)).[2]

¶ 4    Count V, for aggravated battery, alleged that, in committing a battery, defendant knowingly discharged a firearm and caused any injury to another person, to wit, he shot Charrier (720 ILCS 5/12-3.05(e)(1) (West 2014)). Count XI, also for aggravated battery, alleged that, in committing a

---

[1] The indictment provides that defendant is also known as "Lonnie Benford."

[2] The trial court found defendant guilty of all four counts of home invasion but sentenced him only on count IV.

battery other than by the discharge of a firearm, defendant knowingly caused great bodily harm to McDowell, to wit, knots and swelling to his left and right temples (720 ILCS 5/12-3.05(a)(1) (West 2014)). Finally, count XII, for aggravated battery, alleged that, in committing a battery other than by the discharge of a firearm, defendant caused bodily harm to McDowell using a deadly weapon, to wit, struck him about the head with a firearm (720 ILCS 5/12-3.05(f)(1) (West 2014)). We recite only those facts necessary to our disposition of the issues raised on appeal.

¶ 5    Diana Williams testified that she and defendant were previously "friends" who had sex. On April 1, 2015, Williams was at McDowell's basement apartment along with McDowell, McDowell's son Charrier, and Charrier's girlfriend. Around 7:30 p.m., defendant came to McDowell's apartment and McDowell let him in and gave him a beer. Defendant asked Williams to leave with him. She told him to go home and she would meet him later. Defendant then left.

¶ 6    Williams and McDowell continued to sit in the living room and watch television. At some point, Williams heard a "kick" at the door and McDowell went to answer it. Williams then heard "[a]rguing, pushing, [and] shoving" in the hallway and heard McDowell and defendant "fumbling" down the stairs. Defendant "beat***" McDowell's head with a firearm, pushed him onto the couch next to Williams while pointing a firearm at him, and told Williams to "get [her] stuff together." Williams began to retrieve her things and McDowell attempted to help, but defendant pushed him back onto the couch. Charrier then walked into the living room. Defendant pointed the firearm at him and pushed him onto the couch. Defendant kept "talking with the gun." Williams heard it "go off," turned around, and saw Charrier's neck bleeding and defendant standing over him with the firearm in his hand.

¶ 7 McDowell testified that on April 1, 2015, defendant came to his apartment. McDowell and defendant drank a beer, and defendant and Williams conversed. Defendant then left and McDowell and Williams watched television. About an hour later, McDowell heard a knock. Defendant identified himself and McDowell opened the door. Defendant, who was "fidgety" and had his hand in his jacket pocket, asked if Williams was there. McDowell offered to get Williams, and defendant shoved him and said he was coming in. Defendant put a firearm to McDowell's head and demanded to go downstairs. McDowell repeatedly pushed the firearm from his head, and each time defendant slapped McDowell with it.

¶ 8 Still at gunpoint, McDowell and defendant entered the apartment where defendant had him sit on the couch next to Williams. Charrier entered the living room and defendant pointed the firearm at him and ordered him to sit on the couch between McDowell and Williams. When asked to put the firearm away, defendant struck McDowell on his right temple with it. McDowell offered to help Williams gather her things and defendant struck him on the left side of the head with the firearm. The firearm then went off and McDowell saw blood shoot out of Charrier's neck.

¶ 9 McDowell sought treatment a few days later when his ear was aching, ringing, and bleeding. As a result of the incident, McDowell suffered partial hearing loss and consistent ringing in his left ear.

¶ 10 Charrier's girlfriend, Nia Reynolds, testified that on the evening of April 1, 2015, she was with Charrier in a bedroom at McDowell's apartment with the door closed. At some point Reynolds heard a voice she did not recognize. Charrier and Reynolds went to sleep until a few hours later when they woke to an "argument." Charrier went to the living room, leaving the bedroom door slightly open. Reynolds saw McDowell and Williams sitting on the couch with defendant standing

in front of them pointing a firearm at McDowell. When Charrier walked in, defendant made him sit between McDowell and Williams. Defendant told Williams to gather her things and hit McDowell on the side of his head with the firearm. The firearm went off and shot Charrier's throat, which "gush[ed]" blood.

¶ 11    Charrier testified that sometime between 10 p.m. and 12 a.m. on April 1, 2015, he woke to a "boom." Charrier left the bedroom and saw McDowell walking with his hand on his head and defendant behind him with a firearm in his hand. Defendant pointed the firearm at Charrier and sat him on the couch between McDowell and Williams. Defendant told Williams to gather her things and McDowell asked if he could help her. Defendant "pistol whipped" McDowell and the firearm went off, hitting Charrier's neck.

¶ 12    Dr. Richard Gonzalez, an expert in trauma surgery and critical care, testified that on April 2, 2015, paramedics brought Charrier to the hospital with a gunshot wound to his neck. The bullet injured Charrier's lung, brachiocephalic vein, and scapula. Gonzalez testified that, in his opinion, there was a "significant, serious injury."

¶ 13    The trial court found defendant guilty of all four counts of home invasion and counts V and XII for aggravated battery. In ruling on count IV, for home invasion, the court stated: "I am making a finding that as a result of you personally discharging a firearm you caused great bodily harm to Charles Anthony Charrier. In fact I would say severe bodily injury to Charles Anthony Charrier." On the aggravated battery in count V, the court stated "while committing a battery, [defendant] knowingly discharged a firearm and caused *** severe bodily injury to Charles Anthony Charrier." It found defendant not guilty of the aggravated battery in count XI, stating, "I don't believe that you caused great bodily harm when you struck Mr. Maurice McDowell."

¶ 14    Defendant filed a motion for a new trial or, in the alternative, an arrest of judgment, which the court denied.

¶ 15    At the sentencing hearing, the State argued counts I, II, and III, for home invasion, merged into count IV, and the mandatory minimum prison sentence for that offense, including the 25-year firearm enhancement, was 31 years' to life imprisonment. The State argued defendant was eligible for 6 to 30 years' imprisonment on the aggravated battery in count V, a Class X offense, and 2 to 7 years' imprisonment on the aggravated battery in count XII. The State informed the court the sentences for counts IV, V, and XII had to run consecutively to one another. It requested the court sentence defendant to more than the "mandatory minimum sentence" of 39 years' imprisonment. Defense counsel argued, "[w]ithout agreeing to the State's version of the sentencing guidelines," for the "minimum" sentence.

¶ 16    The trial court sentenced defendant to 39 years' imprisonment, noting it was "respectfully declin[ing] the State's indication to go above the minimum," and instead sentencing defendant to the "minimum sentence."

¶ 17    Defendant raises three arguments on appeal. He first argues the mandatory consecutive sentence imposed on count XII, for aggravated battery, should be vacated because there was insufficient evidence McDowell suffered severe bodily injury and the court did not find he suffered severe bodily injury as required to impose the consecutive sentence. Defendant next contends the mandatory consecutive sentences on both aggravated battery counts must be vacated because the trial court failed to (a) specify the counts on which he was sentenced, and (b) make necessary findings of severe bodily injury regarding Charrier (count V) and McDowell (count XII).

Defendant lastly argues his aggravated battery conviction on count V should be vacated under the one-act, one-crime rule.

¶ 18    Defendant acknowledges he failed to preserve these issues for appeal by not including them in a motion to reconsider sentence. See *People v. Hillier*, 237 Ill. 2d 539, 544-45 (2010) ("to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required"). Nevertheless, defendant asserts we can review his claims for plain error.

¶ 19    The plain-error doctrine applies when "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." (Internal quotation marks omitted.) *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). To obtain relief in the sentencing context, a defendant must show "either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Thompson*, 238 Ill. 2d at 613. However, the first question is whether any sentencing error occurred. See *Thompson*, 238 Ill. 2d at 613.

¶ 20    Defendant's first two arguments challenge the trial court's imposition of mandatory consecutive sentences. As his claims are related and partially duplicative, we will address them together.

¶ 21    As an initial matter, despite defendant's apparent claim to the contrary, it is clear from the record on appeal on which counts the trial court sentenced defendant. At the sentencing hearing,

the State informed the court the minimum combined sentence was 39 years in prison, explaining that counts I, II, and III for home invasion merged into count IV and setting forth in detail the sentencing ranges on remaining counts IV, V, and XII, all to be served consecutively. In pronouncing sentence, the court indicated its agreement with the State's recitation of the counts when it stated it "respectfully decline[d] the State's indication to go above the minimum," and then sentenced defendant to the "minimum sentence" of 39 years' imprisonment. Further, the court's handwritten half-sheet and the mittimus, both included in the record on appeal, reflect the court merged counts I, II, and III into count IV and sentenced defendant on counts IV (6 years plus a 25-year enhancement), V (6 years) and XII (2 years). Thus, there is no question as to the sentenced counts.

¶ 22    Turning to whether defendant was properly sentenced to consecutive prison terms, Illinois law provides that a sentencing court shall impose consecutive sentences where "[o]ne of the offenses for which the defendant was convicted was first degree murder or a Class X or a Class 1 felony and the defendant inflicted severe bodily injury." 730 ILCS 5/5-8-4(d)(1) (West 2014). Thus, any Class X or Class 1 felony that results in severe bodily injury being inflicted on the victim of that felony "triggers" consecutive sentences. *People v. Whitney*, 188 Ill. 2d 91, 99 (1999). "[A]ny consecutive sentences imposed for triggering offenses must be served prior to, and independent of, any sentences imposed for nontriggering offenses. While sentences for multiple nontriggering offenses may be served concurrently to one another, they must be served after any sentences for triggering offenses have been discharged." *People ex rel. Senko v. Meersman*, 2012 IL 114163, ¶ 19.

¶ 23    Defendant here was found guilty of two triggering offenses: home invasion (count IV) premised on personal discharge of a firearm proximately causing great bodily harm to Charrier (720 ILCS 5/19-6(a)(5) (West 2014)) and aggravated battery (count V) premised on knowing discharge of a firearm causing injury to Charrier (720 ILCS 5/12-3.05(e)(1) (West 2014)). Both are Class X felonies. See 720 ILCS 5/19-6(c) (West 2014); 720 ILCS 5/12-3.05(h) (West 2014). In finding defendant guilty on the home invasion count, the trial court specifically stated that, by personally discharging the firearm, defendant caused not only great bodily harm, but "severe bodily injury" to Charrier. The court made the same finding in pronouncing defendant guilty on the aggravated battery count, stating that, by discharging the firearm, defendant caused "severe bodily injury" to Charrier. Because defendant was convicted of two Class X felonies in which he was found to have caused "severe bodily injury," the sentencing court was required to impose consecutive sentences for these two triggering offenses. See 730 ILCS 5/5-8-4(d)(1) (West 2014).

¶ 24    Count XII, for aggravated battery premised on defendant causing bodily harm to McDowell by striking him with a firearm (720 ILCS 5/12-3.05(f)(1) (West 2014)), is a Class 3 offense (720 ILCS 5/12-3.05(h) (West 2014)). Therefore, unlike counts IV and V, it is not a triggering offense. See 730 ILCS 5/5-8-4(d)(1) (West 2014). As a nontriggering offense, it must be served after the two triggering offenses. See *Meersman*, 2012 IL 114163, ¶ 19.

¶ 25    Defendant contends count XII cannot be served consecutively because the trial court did not find McDowell suffered a "severe bodily injury" as required to sentence him to a mandatory consecutive term. This argument is not well taken. Any sentence imposed for an offense that triggers statutory mandatory consecutive sentences is required to be served prior to, and independent of, any sentence imposed for nontriggering offenses. *Meersman*, 2012 IL 114163, ¶

19. Therefore, whether the trial court found McDowell suffered a "severe bodily injury" under count XII is irrelevant; the sentence on this nontriggering offense must be served independently after the consecutive sentences for counts IV and V have been discharged. See *Meersman*, 2012 IL 114163, ¶ 19. In sum, the trial court did not err in sentencing defendant to consecutive terms of imprisonment on all three counts.

¶ 26    However, we find the sentence on the aggravated battery in count V must be vacated because, as defendant contends in his final argument, that conviction violates the one-act, one-crime rule. It is well settled that a violation of the one-act, one-crime rule rises to the level of plain error because the error affects the substantial rights of the accused and the integrity of the judicial process. *People v. Artis*, 232 Ill. 2d 156, 167-68 (2009); *People v. Harvey*, 211 Ill. 2d 368, 389 (2004). We agree with defendant that the aggravated battery in count V, premised on him knowingly discharging a firearm and causing injury to Charrier, is a lesser-included offense of his count IV home invasion conviction.

¶ 27    Under the one-act, one-crime rule, a defendant cannot be convicted of multiple offenses arising out of the same physical act. *People v. Almond*, 2015 IL 113817, ¶ 47. If simultaneous convictions violate the rule, the defendant "should be sentenced on the most serious offense and the less serious offense should be vacated." *In re Samantha V.*, 234 Ill. 2d 359, 379 (2009). Whether a conviction should be vacated under the rule is a question of law we review *de novo*. *People v. Johnson*, 237 Ill. 2d 81, 97 (2010).

¶ 28    We conduct a two-part analysis to ascertain whether simultaneous convictions violate the rule. *People v. Miller*, 238 Ill. 2d 161, 165 (2010). The first step is to determine whether the offenses stem from multiple acts or a single act. *Miller*, 238 Ill. 2d at 165. Convictions based on

the same physical act are improper. *Miller*, 238 Ill. 2d at 165. An "act" is defined as any overt or outward manifestation that will support a different offense. *People v. King*, 66 Ill. 2d 551, 566 (1977). If the offenses stem from multiple acts, the second step is to determine whether any of the offenses are lesser-included offenses. *Miller*, 238 Ill. 2d at 165. Simultaneous convictions of the greater offense and a lesser offense cannot stand. *Miller*, 238 Ill. 2d at 165.

¶ 29    We agree with the parties that defendant's convictions under counts IV and V stemmed from multiple physical acts. As charged, both offenses involved discharging a firearm but the home invasion count additionally required the trial court find defendant knowingly entered McDowell's apartment. The act of "entry into a dwelling" is an element of home invasion, but not of aggravated battery. Compare 720 ILCS 5/19-6(a)(5) (West 2014) with 720 ILCS 5/12-3.05(e)(1) (West 2014). Therefore, the convictions were not based on a single physical act. See *People v. Marston*, 353 Ill. App. 3d 513, 519 (2004) ("defendant's convictions of aggravated battery and home invasion do not violate one-act, one-crime principles despite the infliction of only one injury because defendant's entry into the home was a separate act on which the home invasion charge was based"); *People v. Tate*, 106 Ill. App. 3d 774, 778 (1982) (finding that home invasion and aggravated battery constitute different acts because home invasion involves the "separate act" of entering a home).

¶ 30    Having determined defendant's convictions for count IV (home invasion) and count V (aggravated battery) stemmed from multiple physical acts, we next consider whether, as defendant contends, the aggravated battery offense is a lesser-included offense of home invasion. In making this determination, we use the abstract-elements approach and compare the statutory elements of the two offenses. *Miller*, 238 Ill. 2d at 166, 172-73. If all the elements of one offense are included in the second offense and if the first offense contains no element that the second offense lacks, the

first offense is a lesser-included offense of the second. *Miller*, 238 Ill. 2d at 166. This approach is "formulaic and rigid," and considers "solely theoretical or practical impossibility." (Internal quotation marks omitted.) *Miller*, 238 Ill. 2d at 166. "In other words, it must be impossible to commit the greater offense without necessarily committing the lesser offense." *Miller*, 238 Ill. 2d at 166. When applying the abstract-elements approach, we look only to the specific statutory subsection under which a defendant is charged and convicted, not to the entire statutory provision governing the offense. *People v. Reveles-Cordova*, 2020 IL 124797, ¶¶ 14-20.

¶ 31    Defendant was charged and found guilty of home invasion under the following statutory subsection:

> "(a) A person who is not a peace officer acting in the line of duty commits home invasion when without authority he or she knowingly enters the dwelling place of another when he or she knows or has reason to know that one or more persons is present *** and
>
> * * *
>
>    (5) Personally discharges a firearm that proximately causes great bodily harm *** to another person within the dwelling place." 720 ILCS 5/19-6(a)(5) (West 2014).

"A person is considered to have 'personally discharged a firearm' when he or she, while armed with a firearm, knowingly and intentionally fires a firearm causing the ammunition projectile to be forcefully expelled from the firearm." 720 ILCS 5/2-15.5 (West 2014).

¶ 32    The aggravated battery subsection under which defendant was found guilty provides:

> "(e) A person commits aggravated battery when, in committing a battery, he or she knowingly does any of the following:

(1) Discharges a firearm, other than a machine gun or a firearm equipped

with a silencer, and causes any injury to another person." 720 ILCS 5/12-3.05(e)(1)

(West 2014).

The battery statute in turn provides: "A person commits battery if he or she knowingly without

legal justification by any means (1) causes bodily harm to an individual or (2) makes physical

contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3 (West 2014).

¶ 33    Comparing the elements of the home invasion and aggravated battery statutory subsections

at issue demonstrates that all the elements of aggravated battery, *i.e.*, the knowing discharge of a

firearm and causing injury while committing a battery, are included in home invasion, which

requires the personal (knowing and intentional) discharge of a firearm proximately causing great

bodily harm (injury). Accordingly, under the abstract-elements approach, defendant's count V

aggravated battery conviction is a lesser-included offense of his count IV home invasion

conviction, and his simultaneous convictions on those two counts violate the one-act, one-crime

rule. See *Miller*, 238 Ill. 2d at 166.

¶ 34    Still, the State points out that home invasion requires that defendant personally discharged

a firearm that proximately caused great bodily harm to Charrier, while aggravated battery requires

he committed a battery with a firearm that caused injury to Charrier. It asserts that these elements

are different because the proximate cause of great bodily harm required for home invasion can be

caused without making physical contact "as required in a battery."

¶ 35    But physical contact is not required for a battery, because battery can occur in one of two

alternative ways: when the accused by any means "(1) causes bodily harm to an individual *or* (2)

makes physical contact of an insulting or provoking nature with an individual." (Emphasis added.)

See 720 ILCS 5/12-3 (West 2014); *People v. Hale*, 77 Ill. 2d 114, 115 (1979) (battery consists "of either of two alternative types of misconduct"). Since these are "alternative types" of conduct, "makes physical contact of an insulting or provoking nature with an individual" necessarily cannot include "causes bodily harm to an individual"; *i.e.*, battery by physical contact does not cause bodily harm. See *People v. Mays*, 91 Ill. 2d 251, 256 (1982) ("Although it may be difficult to pinpoint exactly what constitutes bodily harm for the purposes of the [battery] statute, some sort of physical pain or damage to the body, like lacerations, bruises or abrasions, whether temporary or permanent, is required. Otherwise there would be no need for the other type of battery, contact of an insulting or provoking nature.").

¶ 36    As the two prongs of the battery statute create two distinct crimes, the State is generally required to elect which type of battery to charge or, if unsure of its evidence, charge in the alternative. *People v. McBrien*, 144 Ill. App. 3d 489, 496 (1986). Here, however, the type of battery at issue is clear from the subsection of the aggravated battery statute under which defendant was charged, and demonstrates that only battery based on causing bodily harm was charged.

¶ 37    Defendant was charged and found guilty under subsection 12-3.05(e)(1), which provides that "[a] person commits aggravated battery when, in committing a battery, he or she knowingly *** [d]ischarges a firearm *** and *causes any injury* to another person." (Emphasis added.) 720 ILCS 5/12-3.05(e)(1) (West 2014). The "causes any injury" element required for aggravated battery is clearly encompassed within the "causes bodily harm" required for battery. See *Mays*, 91 Ill. 2d at 256 (holding that, for the purposes of battery, "bodily harm" means "some sort of physical pain or damage to the body, like lacerations, bruises, or abrasions, whether temporary or permanent") Further, the phrase "causes any injury" describes the conduct of the accused. See

*People v. Lewis*, 327 Ill. App. 3d 285, 291 (2002) (finding "causes bodily harm to an individual of 60 years of age or older" as used in prior aggravated battery subsection 12-4(b)(10) (720 ILCS 5/12-4(b)(10) (West 2000)) "describes the conduct of the accused") Therefore, as the battery underlying the aggravated battery charge at issue here is premised on causing injury to another person, *i.e.*, causing bodily harm to an individual, the alternate form of battery premised on physical contact of an insulting or provoking nature without causing bodily harm cannot apply here.

¶ 38    The State also points out that home invasion requires that a defendant knowingly enters into the dwelling place of another when he knows or has reason to know that one or more people are present, and personally discharges a firearm that proximately causes great bodily harm (720 ILCS 5/19-6(a)(5) (West 2014)), whereas aggravated battery requires that while committing a battery, a defendant knowingly discharges a firearm that causes injury to another person (720 ILCS 5/12-3.05(e)(1) (West 2014)). Thus, the State asserts that the offenses differ as to the knowledge required when the firearm was discharged. However, as already noted, "[a] person is considered to have 'personally discharged a firearm' when he or she, while armed with a firearm, knowingly and intentionally fires a firearm causing the ammunition projectile to be forcefully expelled from the firearm." 720 ILCS 5/2-15.5 (West 2014). Therefore, knowing discharge of a firearm is required for both offenses and the State's contention is without merit.

¶ 39    Defendant's count V aggravated battery conviction violates the one-act, one-crime rule as the offense is a lesser-included offense of home invasion as charged here. When a defendant is convicted in violation of the one-act, one-crime rule, we must vacate the sentence for the less serious offense. *Artis*, 232 Ill. 2d at 165. Aggravated battery is a Class X felony (720 ILCS 5/12-

3.05(e)(1), (h) (West 2014)), while home invasion is "a Class X felony for which 25 years or up to a term of natural life shall be added to the term of imprisonment imposed by the court" (720 ILCS 5/19-6(a)(5), (c) (West 2014)). Thus, home invasion is the more serious offense. See *Artis*, 232 Ill. 2d at 170 (in "determining which offense is the more serious, a reviewing court compares the relative punishments prescribed by the legislature for each offense," as greater punishment is mandated for the more serious offense). As only the sentence on the most serious offense may stand (*Artis*, 232 Ill. 2d at 170), the sentence on aggravated battery (count V) must be vacated and the count merged into the home invasion conviction (*People v. Gordon*, 378 Ill. App. 3d 626, 642 (2007)).

¶ 40    Based on the foregoing, we vacate the sentence on aggravated battery (count V) premised on injury to Charrier and affirm the judgment of the trial court in all other respects.

¶ 41    Affirmed in part; vacated in part.