2021 IL App (1st) 192589-U

No. 1-19-2589

Order filed May 4, 2021

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 DV 40922 |
| | ) | |
| LIDDELL LACY, | ) | Honorable |
| | ) | Terence MacCarthy, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Lavin and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's conviction for domestic battery is affirmed over his contention there was insufficient evidence that the victim suffered bodily harm.

¶ 2    Following a bench trial, defendant Liddell Lacy was found guilty of domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2018)) and sentenced to 12 months of conditional discharge. On appeal, defendant contends that he was not proven guilty beyond a reasonable doubt when no evidence established that he caused bodily harm to the victim. We affirm.

¶ 3    At trial, Katrina Lacy testified that on June 8, 2019, she ran errands with her mother Elnora Lacy, and her daughter Starmara Stevenson.[1] Elnora was 83 years old. When the group arrived at Elnora's home on South 16th Avenue in Maywood that afternoon, defendant was sitting on the front porch. Defendant, Katrina's brother and Elnora's son, did not live there.

¶ 4    As Katrina assisted Elnora up the front porch stairs, defendant stood and blocked their path. Katrina asked defendant to move a hedge cutter cord running down the stairs. Defendant replied that he did not have to move anything, and Elnora could get by. Katrina disagreed because Elnora had Parkinson's Disease, and shook the cord to clear a path.

¶ 5    As Katrina and Elnora proceeded up the stairs, defendant discussed Elnora's rehabilitation care. Katrina told defendant not to talk to her and defendant began yelling and swearing. Defendant was drunk and smelled like alcohol, and Katrina observed a vodka bottle on the stairs. Elnora told defendant to "just get out of the way," but he continued to block the stairs, yell, and swear. Stevenson then exited the vehicle and told defendant to move. Defendant moved "slightly," but continued to speak "jargon and profanity." At this point, defendant was on Katrina's left-hand side and all three women were on the porch. Defendant told Katrina to move and that he would take Elnora inside. However, Katrina said she would accompany Elnora.

¶ 6    Elnora and Stevenson entered the house, but defendant blocked Katrina. She told him to move because she was carrying Elnora's groceries and food. Defendant then elbowed her in the right eye, which caused her pain. Katrina responded by swinging the bag holding Elnora's food and hitting defendant in the face. Defendant next punched Katrina's face "about four or five times

---

[1] For clarity, we will refer to Katrina Lacy and Elnora Lacy by their given names.

on each side." Stevenson told defendant he could not hit Katrina, called him "ridiculous," and pulled him away. Katrina and Elnora both called the police.

¶ 7     As a result of this incident, Katrina's eyes and cheekbones were swollen. Later that day, her son photographed her face. At trial, she identified these photographs and circled injuries to her eyes, cheekbone areas, and lower cheek. These photographs are included in the record on appeal and depict a woman with a puffy face.

¶ 8     During cross-examination, Katrina testified that defendant was in the doorway with his back to her, then turned and elbowed her. When a police officer arrived, he offered medical attention which she declined. The officer did not photograph her injuries. Katrina cared for Elnora, as did defendant "[w]hen he feels like it." She did not know why caring for Elnora caused tension in her relationship with defendant, but acknowledged she had Elnora's power of attorney. She denied that her relationship with defendant worsened several years prior following an argument about Elnora's money; rather, he "tried to initiate something" about Elnora's money. Katrina acknowledged the tension started in 2008 when Elnora first became ill, but asserted defendant had a problem with her since "2003 or 2008."

¶ 9     Stevenson testified that when she arrived at the house with Katrina and Elnora, defendant was sitting on the front steps. She waited in the vehicle because Katrina was going to help Elnora inside the house. Stevenson then noticed that it was taking "a long time" and that defendant was "getting angry." She exited the vehicle to investigate. Defendant yelled that Katrina could not enter the house and Stevenson told him to move so Elnora could enter. When defendant did not move, Stevenson grabbed Elnora and walked underneath defendant's arm. Defendant moved for Elnora, Elnora and Stevenson entered the house, and defendant followed. However, defendant continued

to block Katrina's entry. Defendant and Katrina were yelling. As Stevenson helped Elnora, she "heard" and saw out of the corner of her eye that defendant pushed Katrina. Katrina responded by swinging the bags she was holding at defendant. Stevenson described defendant as "a little crazy" and "all over the place" that afternoon, which is how he acts when he is "either on something or just drunk."

¶ 10    During cross-examination, Stevenson admitted that she loved her mother. During redirect, Stevenson testified that she put defendant in a chokehold after he pushed Katrina and Katrina swung the bags at him. Defendant, however, continued to swing and punch Katrina.

¶ 11    Maywood police officer Sean Earley testified that he responded to the scene and observed defendant and Katrina on the porch. While speaking to Katrina, he noticed that the right side of her face appeared "a little more swollen than the left," but observed no other injuries. He also spoke to defendant and Stevenson. Defendant was a "little bit disheveled" and smelled of alcohol. Earley concluded defendant was intoxicated. Stevenson stated that she had to separate Katrina and defendant. Earley arrested defendant for domestic battery. Later, at a police station, defendant said he had been drinking.

¶ 12    During cross-examination, Earley acknowledged that he did not perform a field sobriety test on defendant or photograph Katrina. After transporting defendant to a police station, he saw Katrina when she came to the station to sign a complaint. Earley did not photograph Katrina at that time because she refused medical treatment. He did not believe photographs were necessary, although they are "usually" taken "if there are any sort of visible injuries." During redirect, Earley testified that although he did not photograph Katrina, the right side of her face was swollen.

¶ 13    Defendant testified that on June 8, 2019, he cut the hedges at Elnora's home. As Elnora and Katrina approached the house, Katrina said that a hedge trimmer cord needed to be moved so that Elnora could go up the stairs. Defendant responded that the cord was not in Elnora's way and that during Elnora's physical therapy she was taught to use big steps so she could handle it "more or less." Katrina was "agitated," told him to move the cord, and ultimately snatched the cord. At this point, defendant stood and they began to argue. Defendant admitted that he said "some nasty things" to Katrina, including that she had stolen money from Elnora, and that this topic arose every time they argued. At this point, Katrina became aggressive, moved forward, and "food was thrown." The situation became a "ruckus." When Stevenson put him in a headlock, he just wanted to "get away." Defendant acknowledged drinking alcohol that day, but denied elbowing or punching Katrina.

¶ 14    During cross-examination, defendant denied blocking Katrina from entering the house and elbowing her. However, after his "words," Katrina attacked him. He did not remember Stevenson assisting Elnora into the house.

¶ 15    Elnora testified that when she returned home, defendant was sitting on the porch. As she walked to the house, he stood and opened the screen door. When she walked inside, defendant and Katrina were arguing. She denied that Stevenson helped her inside. Elnora did not see defendant and Katrina strike each other. She used the bathroom and then sat in the living room. She did not see Katrina again that day and Katrina did not come into the house. Stevenson did enter the house. Later that day, Elnora spoke to a police officer. When Elnora next saw Katrina "after a couple of days," she did not see any swelling or bruising on Katrina's face.

¶ 16     During cross-examination, Elnora acknowledged that Katrina helped her inside, but did not remember Stevenson helping her. She did not see what happened between Katrina and defendant.

¶ 17     In rebuttal, the State called Stevenson, who testified that she was inside the house when she put defendant in a chokehold.

¶ 18     In closing argument, the State noted that the photographs corroborated Katrina's testimony that she had swelling to the side of her face after being struck by defendant. Defense counsel argued that there was ongoing tension between defendant and Katrina, and that Katrina and Stevenson were biased. Counsel further argued that Earley did not see any injuries to Katrina that "justified" photographs and that the court only had Katrina's word that the photographs accurately depicted her injuries and were taken that day. Defendant, on the other hand, testified credibly that he did not strike Katrina.

¶ 19     In finding defendant guilty of domestic battery, the trial court acknowledged that Katrina and defendant had an underlying dispute over Elnora's care that gave them motives to testify "perhaps less than truthfully." The court noted Katrina and defendant testified to completely different versions of events. Katrina's testimony was clear and corroborated by Stevenson's action of leaving the vehicle and Earley's testimony that he observed swelling to Katrina's face. Moreover, the photographs showed "slight swelling" to Katrina's face. The court noted that in defendant's version of events, there was no reason for Stevenson to put him in a chokehold. However, it was only defendant's behavior in striking Katrina that led to the chokehold.

¶ 20     Defendant filed a motion for a new trial alleging that Katrina's testimony that he punched her in the face multiple times was contradicted by photographs which only showed "possible swelling" to her right cheek. The trial court denied defendant a new trial and sentenced him to 12

months of supervision. On its own motion, the court later amended the sentence to 12 months of conditional discharge.

¶ 21    On appeal, defendant contends that he was not proven guilty beyond a reasonable doubt when no evidence established that he caused bodily harm to Katrina. Defendant argues that the photographs of Katrina do not depict injuries consistent with being elbowed in the eye and punched four to five times in the face by an adult man. He concludes that the lack of injury in the photographs is fatal to Katrina's credibility.

¶ 22    When reviewing a challenge to the sufficiency of the evidence, "the question is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from the facts presented at trial. *Id.* "In reviewing the evidence, this court will not retry the defendant, nor will we substitute our judgment for that of the trier of fact." *Id.* We do not reverse a defendant's conviction "simply because the evidence is contradictory or because the defendant claims that a witness was not credible." *People v. Gray*, 2017 IL 120958, ¶ 36. Rather, reversal is warranted only in those cases where the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of a defendant's guilt. *People v. Newton*, 2018 IL 122958, ¶ 24.

¶ 23    A person commits domestic battery when he knowingly without legal justification causes bodily harm to any family or household member. 720 ILCS 5/12-3.2(a)(1) (West 2018). Defendant only challenges whether he caused bodily harm to Katrina.

¶ 24    "Although it may be difficult to pinpoint exactly what constitutes bodily harm ***, some sort of physical pain or damage to the body, like lacerations, bruises or abrasions, whether temporary or permanent, is required." *People v. Mays*, 91 Ill. 2d 251, 256 (1982). "In determining whether a defendant's actions caused bodily harm, direct evidence of injury may be considered or the trier of fact may infer injury based upon circumstantial evidence in light of common experience." *People v. Bishop*, 218 Ill. 2d 232, 250 (2006).

¶ 25    Here, Katrina testified that defendant elbowed her in the eye and then punched her in the face four or five times. She felt pain when defendant elbowed her and had swelling to the eyes and cheekbones following this incident. Katrina identified injuries to her eyes, cheekbone areas, and lower cheek in photographs taken on the day of the incident. Stevenson also testified that although she put defendant in a chokehold, he continued to swing and punch Katrina. Evidence of Katrina's injuries was corroborated by Earley, who testified that one side of her face looked "more swollen" than the other. Here, taking the evidence in the light most favorable to the State, as we must, there was sufficient evidence that defendant caused bodily harm to Katrina to sustain a conviction for domestic battery.

¶ 26    Defendant, however, contends that Katrina's testimony was incredible because the photographs do not show the face of a woman who was punched repeatedly by an adult man. Defendant concludes that the fact that the photographs do not show more severe injuries to Katrina's face is fatal to her credibility.

¶ 27    Contrary to defendant's arguments on appeal, the testimony of Katrina, Stevenson, and Earley was sufficient to support a reasonable inference that defendant's actions in elbowing and punching Katrina caused her physical pain and damage to her body. Common sense dictates that

an individual who had been elbowed and punched in the manner described by the eyewitnesses and who appeared as Katrina did immediately after the altercation, would have experienced physical pain. Moreover, the photographs show what appears to be swelling in the circled areas. Although defendant concedes the photographs show "a woman whose skin is slightly puffy," he argues that this puffiness was "not necessarily the result of a physical assault." However, defendant's argument that Katrina may naturally have a puffy face is the sort of explanation "consistent with innocence" that courts are not required to search out or raise to the level of reasonable doubt. See *People v. Wheeler*, 226 Ill. 2d 92, 117-18 (2007).

¶ 28    We reiterate that the State established all of the elements of domestic battery if Katrina's testimony were believed. The trial court acknowledged tension in Katrina's and defendant's relationship, but found Katrina's version of events credible as evidenced by its finding. The resolution of witness credibility is reserved for the trier of fact. *Gray*, 2017 IL 120958, ¶ 35.

¶ 29    Moreover, although much of the case rested on a credibility contest between Katrina and defendant, certain parts of Katrina's version of events were corroborated. Stevenson and defendant both testified that Stevenson placed defendant in a chokehold. Defendant testified that the chokehold was due to the argument in which Katrina had become the aggressor, but to accept defendant's testimony would mean that Stevenson's reaction to Katrina's aggression was to put defendant in a chokehold; the court rejected that possibility. Additionally, Earley testified that the right side of Katrina's face was more swollen than the left. Contrary to defendant's position on appeal, the fact that Katrina suffered pain and swelling as a result of the incident is sufficient to establish that she suffered bodily harm. See *Mays*, 91 Ill. 2d at 256 (while "it may be difficult to

pinpoint exactly what constitutes bodily harm *** some sort of physical pain or damage to the body, like lacerations, bruises or abrasions, whether temporary or permanent, is required").

¶ 30    We are unpersuaded by defendant's argument, unsupported by authority, that an adult man who punches someone repeatedly would automatically cause injuries more severe than pain and swelling, and that such an encounter would "most likely would have required medical treatment." When weighing evidence, the trier of fact is not required to disregard inferences flowing naturally from the evidence before it, nor need it search out all possible explanations consistent with innocence and raise them to the level of reasonable doubt. *In re Jonathon C.B.*, 2011 IL 107750, ¶ 60.

¶ 31    A defendant's conviction will be reversed only when the evidence is so unreasonable or improbable that reasonable doubt of his guilt remains (*Newton*, 2018 IL 122958, ¶ 24); this is not one of those cases. We therefore affirm defendant's conviction for domestic battery.

¶ 32    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 33    Affirmed.